### The People v. Revilo Wells.

The court can add nothing to a special finding, or infer any facts which the jury have not inferred and set forth. The court can draw only the legal conclusions from the facts found.

Where defendant was indicted !under §5899 of Compiled Laws, and charged with illegally issuing a certain draft in the similitude of a bank bill, and a special verdict was returned, which found that the defendant paid out the draft on a check drawn upon him, but did not find that defendant was in any way a party to the instrument, or in any manner connected with, responsible for, or interested in it, except what might be inferred from the single fact of his paying it out; — *Held*, that such "paying out" of the draft is not necessarily equivalent to, or identical with the "issuing" of the paper, within the meaning of the statute, and that the special verdict failed, therefore, to bring the defendant within the statute.

*Heard April* 21*st. Decided April* 25*th.*

Question reserved from Kent Circuit, where defendant was indicted for unlawful banking, and a special verdict found.

The indictment was found at the December term, 1858. The first count is as follows:

"The grand jurors of the people of the state of Michigan, good and lawful men duly empannelled and sworn, inquiring in and for the body of the county of Kent, upon their oaths present, that Revilo Wells, of the city of Grand Rapids, on the second day of December, in the year of our Lord one thousand eight hundred and fifty - eight, at the

city of Grand Rapids, in the county of Kent aforesaid, not being authorized by law to do a regular banking business, and to issue bank bills, did issue a certain draft in the similitude of a bank bill, which said draft was of the tenor following, that is to say:

" [2]      Kenosha, Wisconsin, Oct. 1st, 1858.      [2]
" Savings and Exchange Bank of R. Wells, Grand Rapids, "Mich. Pay to C. Allen or bearer, in Current Bank Notes,
         "Two dollars on demand.
" Accepted,                    *Wm. A. Wells.*
"Two.     *R. Wells, Banker.*             Two."
Against the peace," &c.

There were four other counts, which are sufficiently stated in the opinion.

The special verdict is as follows:

" Afterwards to wit, on the day and at the place within named, before Hon. Louis S. Lovell, the Circuit Judge of the eighth judicial circuit of the state of Michigan, and presiding judge of the said court, came the within named Stephen G. Champlin, Prosecuting Attorney of the said county of Kent, for and on behalf of the People of the state of Michigan, and the said Revilo Wells, in person as well as by his counsel, also appearing, and jurors of the jury whereof mention is within made, being called, likewise came, and being elected, tried and sworn, upon their oaths do say, that the said Revilo Wells, on the second day of December, A. D. 1858, at his office in the city of Grand Rapids, did pay out to one Miles Lattimer, two hundred dollars in bills, on two checks drawn on said Wells, of one hundred dollars each. That one hundred dollars of such sum consisted in bills of various banks in Illinois and Wisconsin, and the other hundred dollars was paid in bills or drafts similar to that charged in the indictment, and one of which was the identical draft charged in said indictment: that the same is in the similitude of bank bill.

" And the jurors of the jury aforesaid do further say, that

8 MICH.—H

they also find that in the month of October, A. D. 1858, the said Revilo Wells did exhibit to John Ingraham a package containing one hundred dollars, in drafts or bills similar to that charged in the indictment.

" And the jurors of the jury aforesaid, upon their oaths aforesaid, do further say, that they also find that bank notes which are current for the purposes of trade and commerce in the city of Grand Rapids, are not convertible into specie at par, in the said city of Grand Rapids, at the will of the holder.

"But whether," &c.

The questions arising upon this special verdict were reserved by the Circuit Judge for the opinion of this court.

*J. M. Howard, Attorney General,* for the People.

*T. Romeyn,* for defendant.

CHRISTIANCY J.:

The questions involved in this case arise upon the indictment and the special verdict.

The first and fourth counts charged, in substance, that the defendant, not being authorized · by law to do a regular banking business and to issue bank bills, " did issue a certain draft in the similitude of a bank bill," setting forth the draft.

The second count charges that defendant " did issue a certain draft to be put in circulation as money."

The third, that he " did issue" the draft " to be used as a currency or circulating medium."

The fifth, that he issued · it, " to be loaned or put in circulation as money ;" and the sixth, that he issued it " to pass or be used as a currency or circulating medium." All the counts set forth the same draft in *haec verba.*

All these counts, then, charge the defendant with having " issued" the draft, and it is manifest from the statute upon which the indictment is founded (*Comp. L.* §5899),

that the substantive offense, in every form defined by the section, consists in the issuing of the paper therein described: that, whatever other ingredients may be required to complete the offense, if the defendant did not "issue" the paper, he has committed no offense under this section.

Have the jury, by their special verdict, found that the defendant issued the paper as set forth in any count of the indictment? This is the first question, and if decided in the negative no other question can properly arise.

The special verdict, so far as this point is involved, only finds that the defendant " *did pay out*" the paper in question to one Miles Lattimer, on a check drawn upon the defendant.

The court can add nothing to this finding: they can draw only the legal conclusions from the facts found. No facts can be inferred by the court which the jury have not inferred and set forth; especially against a defendant in a criminal case. To this verdict the maxim applies, in its full force; " *de non apparentibus et non existentibus, eadem est ratio, et judicium.*"

This verdict does not find that the defendant is the same person whose name purports to be signed to the acceptance set forth in the indictment, or that he had any connection with or interest in the " Savings and Exchange Bank of R. Wells," upon which the draft purports to be drawn; nor that he was a banker, or in any manner connected with, responsible for, or interested in the paper in question, except what is to be inferred from the single fact of paying it out upon a check drawn upon him.

None of these facts, which the verdict has omitted, can be supplied by the court.

We are compelled, therefore, to consider the defendant as no otherwise connected with, or responsible for, the issue of this paper, than any other individual would be by the naked fact of paying it out upon a check or order drawn upon him; and the question is whether such " pay-

ing out" is necessarily equivalent to, or identical with, the "*issuing*" of the paper, within the meaning of this statute? We do not think this is the fair import of the term "*issue*" as here used.

This section, so far as relates to the present question, is the same found in section five of chapter fifty of the Revised Statutes of 1846. The chapter is there entitled, " *Of unauthorized banking, and certain notes or evidences of debt issued by banks.*" The amendment of 1853 (*Laws of* 1853, *p.* 20), in no way affects the present question. An examination of the chapter, as it now stands (*Comp. L.* §§ 5895 *to* 5903) will, we think, show very clearly that the term is not used in the sense of merely passing, or paying out, by a person in no way a party to the paper, nor connected, as principal or agent, with its *original* issue, and who is to derive no profit or benefit from the illegal enterprise.

By the first section, "no person unauthorized by law, shall subscribe to, or become a member or in any way interested in, any association or company formed for the purpose of issuing notes or other evidences of debt, to be loaned or put in circulation as money; nor shall any person unauthorized by law subscribe to, or become in any way interested in, any bank or fund created or to be created for the like purposes, or either of them."

Section two imposes a penalty for becoming a member of such company, or being interested in such fund.

Section three prohibits any incorporated company, not expressly authorized by law, from employing any part of its effects, or being in any way interested in, any fund that shall be employed for the purpose of receiving deposites, making discounts *or issuing notes,* or other evidences of debt "to be loaned or put in circulation as money," and imposes a penalty for a violation of the section.

Section four declares all such notes, &c., mentioned in the preceding section, void.

Section five (upon which this indictment is based), as amended by the act of 1853, enacts, "No person, association or body corporate, whether public or private, except such bodies corporate as are or shall be expressly authorized by law to do a regular banking business, and to issue bank bills, shall issue any bills, notes, due bills, drafts or other evidences of debt, in the similitude of bank bills, or to be loaned or put in circulation as money, or to pass or be used as a currency or circulating medium;" and imposes the penalty for a violation.

This section distinguishes between the act of issuing by the parties interested, and the passing or circulating by other parties: the latter is stated as the purpose for which the former act is committed.

The sixth section prohibits any corporation, authorized to do a banking business, from making their bills payable in any thing but specie, or at any other place but their banking house, &c.

By the seventh section it is enacted, "No person shall pay, give or receive in payment, or in any way circulate or attempt to circulate, any bank bill, promissory note or other evidence of debt, *issued* by any banking company, or by any other corporation within this state or elsewhere, which shall purport to be for the payment of a less sum than one dollar, or which shall be made payable otherwise than in specie on demand;" and imposes a penalty.

This section makes a clear and manifest distinction between the *issuing* and *paying* or *circulating*, and imposes a penalty for *paying* or *circulating* the paper there described, "issued by any banking company," &c. If this section had been made applicable to the paper described in the fifth section, the special verdict would have brought the defendant within it. And if it had been intended to make the offense consist in the paying out or circulating the paper described in the fifth section, no good reason can be given why the Legislature should not have used language similar to that in the seventh section.

The eighth section also makes a distinction between the *issuing* and the *passing* or *circulating* post notes, &c.

Upon a full examination of the statute, therefore, we think it too clear to admit of any reasonable doubt, that the special verdict in this case fails to bring the defendant within any provision of this statute, or any other statute of this state.

It must be certified to the Circuit Court for the county of Kent, as the opinion of this court, that upon the facts found by the jury, defendant is not guilty in manner and form as charged in the indictment.

MANNING and CAMPBELL JJ., concurred.

MARTIN CH. J., was absent.