## Henry J. Buckley et al. v. Great Western Railway Co.

*Common Carriers: Warehousemen.* In the absence of any usage, special circumstances, or agreement, the liability of Railway Companies for goods in warehouse awaiting delivery is that of common carriers.

*Heard April 8. Decided April 13.*

Error to Wayne Circuit.

This was an action brought to recover damages from the Great Western Railway Co., for the loss of certain flour destroyed by fire on the 26th day of April, 1866, while in their depot at Detroit.

The following is a copy of the declaration:

"STATE OF MICHIGAN, WAYNE COUNTY.

Henry J. Buckley, John Stirling and Frederick Lasier, of the City of Detroit, in said county, as late partners in trade, and doing business under the name and style of Buckley & Co., plaintiffs, by D. C. Holbrook, their attorney, filing this their declaration, as commencement of suit, complain of the Great Western Railway Company of Canada, a foreign corporation, created and existing under the laws of Canada, in an action of trespass on the case.

For that, whereas, the defendant, before and at the time of the delivery of the goods and chattels to it, as next hereinafter mentioned, was and still is a Common Carrier of goods and chattels for hire, from London, Canada West, to Detroit, Michigan; and whereas, also, the plaintiff, whilst the defendant was such a common carrier, as aforesaid, to wit: on the 17th day of April, A. D. 1866, caused to be delivered to the said defendant, and the defendant then accepted and received of and from the plaintiffs three hundred barrels of flour of the plaintiffs, of great value, to wit.: of the value of six thousand dollars, to be safely carried and conveyed by the said defendant from London, aforesaid, to Detroit, aforesaid, and then and there to wit.: at Detroit, aforesaid, safely and securely to be delivered to the plain-

18 MICH.—I.

tiffs, for a certain reasonable reward to the defendant in that behalf.

Yet the defendant not regarding its duty as such common carrier, as aforesaid, but contriving and fraudulently intending to deceive, defraud and injure the plaintiffs, in this behalf did not, nor would safely or securely carry or convey the said flour, aforesaid, from London, aforesaid, to Detroit, aforesaid, nor there, to wit: at Detroit, safely or securely to deliver the same for them, the said plaintiffs, but on the contrary thereof, the said defendant, so being such common carrier, as aforesaid, so carelessly and negligently behaved and conducted itself on the premises, that by and through the carelessness, negligence and default of the defendant on the premises, the said flour being of the value aforesaid, became and was wholly lost to the plaintiffs, whereby an action hath accrued to the said plaintiffs, to their damage, six thousand dollars, and therefore they bring suit."

The jury found a special verdict, and which is set forth in the opinion. The court rendered a judgment for plaintiff.

*Gray & Moran,* and *T. Romeyn,* for plaintiff in error.

The declaration in this action is simply for negligence, and consequent loss of goods by the defendants, as common carriers.

There is no count for delay, and for special damages resulting from it.

The defendants, if liable at all, are liable for the loss of the goods by their negligence; not for damages for the delay.

Under the finding of the jury two questions arise:

*a.* Are the defendants, in this form of action and under these pleadings, responsible for the loss of the goods by fire, on the ground that their liability as carriers had not terminated?

*b.* Are they liable for the delay in conveying the goods, in consequence of the burning of the goods by a fire, to which they would not have been subjected but for such delay ?

1. If the duty of the defendants as carriers had terminated at the time of the destruction of the flour, then the defendants are not liable, as warehousemen, for a loss by fire, without their negligence or fault.

2. The liability of the defendants as carriers had ceased, and they were responsible only as warehousemen.

*a.* Their liability must be determined on the principles of the common law.

The defendant below was a foreign corporation.

No usage is shown to exist as to notice of its arrival, storage, etc. In this respect this case differs from *McMillan's, 16 Mich. 83.*

No proof was given of the law of Canada.

*b.* At common law, the liability of the defendants as carriers had ceased.

The goods had actually been deposited in the warehouse of the defendants. This warehouse was situated beyond their terminus in Canada. Notice had been given to the plaintiffs, who commenced to remove the flour and took away a part of it, and who might, if they had chosen so to do, have had the warehouse kept open and removed the residue before the fire occurred, which destroyed the warehouse, without the fault of the defendants.

*c.* The subjecting the carrier to liability after the transit is ended and the goods warehoused, is opposed to the general principles of law, as laid down by elementary writers, and the whole course of modern legislation.—*Story on Bailment,* § *536; See Chitty on Cont. 483; 2 Pars. on Cont. (5 Ed.) pp. 140, 183; Angell, on Carriers,* § *313.* •

The statutes of this and of other states, in granting of railroad charters, provide for the substitution of liabilities

as warehousemen for that of carriers under those circumstances.

So does the legislation of Canada. And all our vast lake commerce is relieved by statute from liability from loss by fire, except in case of negligence.

*d.* The rule which would hold us liable in this case is opposed to the weight of decisions in the courts of this country.

The decisions of the state courts are referred to in the opinion delivered in the *McMillan case.* See argument of counsel for plaintiff, on page 82, and see pages 103, 124.

As to the United States decisions, see "*The Eddy,*" (*5 Wallace, 495*) which construes the doctrine of Parsons as we contend should be done.)—*Richardson v. Goddard, 23 How. 39.*

We think that the true rule on this subject is that laid down by Chief Justice *Shaw,* in *Norway Plains Co. v. Boston & Maine Railway, 1 Gray, 263.*

The doctrine for which we contend is briefly this: That where usage sanctions it, the carrier may deposit the goods at the termination of the transit in a suitable warehouse. His liability as carrier then ceases, and that of warehouseman commences; that it is his duty also to give notice of the arrival, unless universal usage excuses it.

All the liability attaching to and protecting millions of property elsewhere, under similar circumstances, remains. This was all the protection ever extended to property carried by water, after it had reached the end of the route, and now by legislation such liability is changed even to goods while on the route and in transit.

*e.* In this action (conceding the doctrine of the McMillan case,) the transit had ended by the delivery of the goods. Was there a delivery?

There was a delivery of a part, sufficient to constitute a perfect delivery on a sale, so as to pass title; sufficient to defeat the right of stoppage in transitu; sufficient to comply with the Statute of Frauds.

The consignee might have removed them, if he had requested the defendants to keep open after the usual hours. He elected not to remove a part of them, but actually took away a part, and voluntarily left a part safe housed in a warehouse. Knowing all about the situation of the goods and their arrival in good order and their deposit, he might have insured against the loss of them.

3. The defendants are not liable on the ground of delay.

*a.* If the goods had been in fact delivered to and accepted by the plaintiff, then no adjudged case or elementary text-book holds the carrier liable.

*b.* He is not liable for the remote damages in this case.— *Morrison v. Davis,* 20 *Penn. 171 ; Denny v. N. Y. Cent. R. R. Co. 13 Gray, 481 ; 7 Gray, 86 ; 2 Greenl. Ev. 250 ; Angell on Carr. 201 ; 2 Red. on Railway, 6 and 7 ; Contra, Read v. Spaulding, 5 Bosw. 395 ; Davis v. Garrett, 6 Bing. 716 ; Williams v. Grant, 1 Conn. 492 ; 12 Conn. 410 ; 4 Whart. 204 ; 3 Saund. 610 ; 30 N. Y. 564, 630 ; 29 Id. 115.*

*D. C. Holbrook,* for defendants in error.

The special verdict in this case shows the facts.

The defendants in error contend, in addition to the ordinary liability of a common carrier, to keep goods safely a reasonable time after their receipt, that the delay in carrying should also make the plaintiff in error liable in this case.—*Reed v. Spalding, 30 N. Y. 630 ; Michael v. N. Y C. R. R. Id. 564 ; Wood v. Crocker, 13 Wis. 395 ; 5 Bosw. 395 ; 38 Vermont, 402 ; Contra, 13 Gray, 481 ; 20 Penn. St. 171.*

The law of carriers, as to their liability, either as such or as warehousemen, was so fully discussed in the cases of *McMillan and others,* reported *16 Mich.* that a review of all the cases here would be useless.

The fact that a part of the flour was delivered, does not alter the case; the same fact was involved in the case of *King v. The M. S. & N. I. R. R. 16 Mich. Rep. 132.*

BUCKLEY *v.* GREAT WESTERN RAILWAY CO.

The defendants in this case were notified of the receipt, of the flour, at 5½ o'clock in the afternoon of the 26th April. The business of the day closed at 6 o'clock' P. M., and had the defendants in' error not taken any flour away, the court would have held the plaintiff in error liable.

It would seem strange that, because the defendants in error succeeded after business hours in getting part only, they lose the balance. 300 barrels of flour cannot be moved in the night very well, and there was no expectation that a single barrel would have been touched.

GRAVES J.

The plaintiffs by their declaration allege that at the time therein mentioned, the company were common carriers between London, in Canada, and Detroit in Michigan, and that being such common carriers, the plaintiffs delivered to them three hundred barrels of flour belonging to the plaintiffs of the value of $6,000 to be safely carried and conveyed by the company from London to Detroit, and then and there by the company to be safely and securely delivered to the plaintiffs, and that the company did not nor would safely or securely carry the flour to Detroit, nor at the latter place safely or securely deliver the same, whereby it was lost to the plaintiffs.

The company having pleaded the general issue, the jury upon the trial returned a special verdict by which they found that on the 17th of April, 1866, the plaintiffs delivered of their own property to the company at London, three hundred barrels of flour to be transported by the company to Detroit, and then by the latter to be delivered to the plaintiffs, as common carriers; that on the 24th of April the plaintiffs complained that the flour was unnecessarily delayed; that on the 26th of April, in the afternoon, it arrived in Detroit, and was deposited in the warehouse of the company, of which the plaintiffs were notified at half past

five in the same afternoon, and that the plaintiffs then commenced receiving the flour and took away ten barrels a little after six of the same evening, which was the usual hour of closing business for the day at the depot; that it was the custom of the company to keep open after business hours to deliver goods if requested, but such request was not made in this case; that on the night of that day the balance of the flour was destroyed by fire without negligence or fault of the company; that in the ordinary course of business, the company should have delivered the flour in three days after its receipt, and was therefore guilty of negligence in not carrying it from London to Detroit with diligence.

The damages were fixed by the jury at $3,459 44, to be recovered by the plaintiffs, if the court should think them entitled to judgment upon the facts.

Upon this verdict the court below awarded judgment in favor of the plaintiffs, and we are required to determine whether in this there was error.

The company object to a recovery against them upon two grounds. First, that their duty as carriers had ceased at the time of the fire; and second, that the delay in conveying the flour to Detroit, as found by the jury, will not support the judgment.

It is proper to observe that this is a special verdict, formally sufficient, and which we are required to examine according to the settled rules applicable to such proceedings. We are not permitted to assume any facts not therein stated, or to infer any from those found, but must take the finding as the jury have made it, subject however to the allegations in the pleadings. — *Street v. Roberts, 2 Sid. 86; Tancred v. Christy, 12 Mees. and Wels. 316; Jenks v. Hallet and Bowne, 1 Caines R. 60; Seward v. Jackson, 8 Cow. 406; McCarty v. Hudsons, 24 Wend. 291; Birckhead v. Brown, 5 Hill, 634–646; Hill v. Covell, 1 Comstock 522; Eisemann v. Swan, 6 Bosworth, 668; People v. Wells, 8 Mich. 104.*

A strict observance of the law on this subject was required of the court below, in order to preserve the relative powers of the court and jury; and this court, having in the premises neither original jurisdiction nor authority to ascertain facts by inference, or to presume any not actually found, should sedulously endeavor to avoid any infraction of these rules.

An opposite course would favor confusion of the separate functions of court and jury; would tend to subvert a vital distinction between original and appellate jurisdiction, and would imply an assumption of right in this court to go behind the record to which the law has carefully confined us.

On recurring to the declaration, it is very obvious that the plaintiffs have not counted on delay in the carriage of the flour, while the verdict, when coupled with the pleadings, and restricted by them, as it must be, denotes very clearly that the real ground of complaint against the company was the non-delivery.

It is alleged in the declaration that the company assumed to carry and convey safely, and, thereupon, safely and securely to deliver; and, if this were taken in the broadest sense, instead of most strictly against the pleader it could not be considered as averring a duty or undertaking to carry within any particular time.

Admitting it to be one of the duties of the carrier to transport without unreasonable delay, the neglect of that duty could not be a ground of recovery against him, without an averment to express and charge the duty, and the assignment of a breach of it.

I am therefore of opinion that for this reason, without suggesting others, the plaintiffs could claim no right to recover for the negligent delay in carriage which seems to have occurred.

It remains to inquire, whether a recovery upon this record was authorized on the ground of non-delivery.

The undertaking of the company, as common carriers, to transport the plaintiffs' flour from London to Detroit, an d to deliver it safely and securely at the latter place, to the plaintiffs, was distinctly alleged; and the jury as distinctly found this allegation to be true. It was likewise alleged that, by the negligence and default of the company in the premises, the flour was lost to the plaintiffs; and the jury found that the carriage to Detroit took place, but that the flour, after reaching the warehouse of the company at the latter place, was, with the exception of ten barrels, removed by the plaintiffs, destroyed by fire in the warehouse in the following night. These findings, taken by themselves, supported that part of the plaintiffs' case based on non-delivery, and established a *prima facie* right in the plaintiffs to recover for the property destroyed.

The flour, according to the record before us, having been received by the company, and apparently in their character of carriers, simply for transportation to Detroit, and delivery to the plaintiffs at that place, it was for the company to show that the non-delivery, or the loss at their warehouse, which made delivery impossible, proceeded from causes, or was marked by circumstances, which relieved them from the liability imputed by the plaintiffs.

Having come under the responsibilities of carriers by receiving in that character, and ostensibly in that character only, the property for transportation and delivery, these responsibilities must have necessarily continued until delivery, or the occurrence of some event which the law would consider as sufficient to excuse it.

Recognizing the necessity of meeting the case thus made against them, the company take the position that a circumstance did occur, that an event did take place which relieved them from liability for the loss of the property.

They claim that, inasmuch as the flour had reached their warehouse or depot in Detroit, and had been by them deposited therein, their responsibility as carriers was by such

act exchanged for their responsibility as warehousemen, and in which character of course they would not be liable.

No question arises in the case as to the necessity of notice, as that was, in fact, given, and the verdict contained no facts which will enable us to judge of the effect of the notice, in respect to the right of the company to shift the character of the bailment. It must be assumed that no such facts existed.

That the same party may be both carrier and warehouseman at the same time, cannot be disputed; but the two employments, if carried on by one party, must after all be as separate and distinct in quality as though they were pursued by different parties, and their functions cannot be so commingled as to attach to the same property at the same time.

This is made evident by the diversity of duties and responsibilities of the two employments, and the nature and incidents of the business; and the ground taken by the company that the custody was passed from and by them in the character of carriers to themselves in their character of warehousemen, and that this saved them from liability, is an admission of the ample nature of the distinction.

Indeed, the difference is quite as striking between the quality of carrier and that of warehouseman, as between a party in his personal capacity, and in that of administrator.

As, therefore, the two characters are completely distinguishable, though belonging to the same party, it seems a necessary result that an engagement or agreement, ostensibly in the one only, does not by necessity imply any engagement or employment in the other also.

The circumstance that a party acts generally as a carrier or being such, assumes in a given case, to handle property apparently in that character only, can no more imply that an agreement has been made with him to deal with the property as a warehouseman, than will an engagement with

a warehouseman to store goods imply a contract with the latter to act as carrier. And the agreement by the carrier to transport goods can never by itself involve an agreement with him that he may reduce his responsibility as carrier to that of warehouseman, at the end of his route by deposit in his depot.

Without presuming to question the necessity of applying established principles to those cases to which they are suited, it appears to me that some of the courts in their desire to lay down general rules, have not attended sufficiently to the circumstance that carriers and their customers are still at liberty to regulate by contract, express or implied, much of the business to be done between them; and that the propriety of the application of this or that legal rule must often depend upon such regulations.

The course to be pursued by the carrier, to shield himself from further responsibility in his quality of carrier when the transportation is accomplished, is not the subject of abstract law disconnected from the surrounding circumstances, but is a matter depending upon contract, and to be determined by reference to the express stipulations of the parties, or the varying facts from which, when presented, the law will infer the rights, duties and obligations of the parties.

When the party has taken it upon himself to act in his character of carrier in a given case, it becomes a question for the jury, upon the evidence, or for the court upon the facts when specially found, whether he also obtained the right or became obliged to act as warehouseman also in any stage of the business; and the mere fact that the carrier though a railroad company, possessed a warehousing depot at the end of the route, would not suffice to raise the legal inference of a right to shift the characters by immediate deposit in the warehouse, especially if it appear that the carrier was ostensibly employed as carrier only.

'If, when prosecuted for non-delivery to the consignee, the carrier would excuse himself by showing that the property was destroyed by fire, and that the destruction occurred shortly after he had changed the nature of the bailment, and exchanged his character of carrier. for that of warehouseman touching the goods in question, he would have to satisfy the jury that the passage from himself as carrier to himself as warehouseman, was not simply his mere voluntary act, but one either warranted by an express contract, or a contract fairly inferrible from the nature of the business, the known necessities under which it was carried on, the established usage on the subject and the like; and in case of a special verdict it would be necessary that the express contract, if any, should be found, or, if not, that the particular facts should be stated from which the law would infer the right asserted by the carrier.

We have seen that the verdict in this case finds in terms that the company in the particular character of carriers undertook to transport the flour and deliver it to the plaintiffs at Detroit, while no undertaking by them as warehousemen, or any agreement by them in or for that character is found by the jury.

It appears that the company were carriers by rail, and it is shown by the verdict that they had a warehousing depot at Detroit, in which they in fact deposited the flour a few hours before the fire, and that they had a custom to keep open after business hours when requested, for the purpose of making delivery, and these are the only facts in the verdict which can be claimed to warrant the legal inference of any right of the company to cast off their responsibility as carriers by deposit in their warehouse.

The finding that the company undertook as carriers to transport and deliver, could not imply as matter of law the right claimed by them to change the form of the bailment by their own act of deposit in the warehouse; but in the state of this record such finding would tend rather to

exclude the idea of an agreement that the company should possess the right to deal with the property as warehousemen or in any character than that of carriers; and it seems to me that the other facts taken by themselves or with those just mentioned, can afford no ground whatever, to infer as matter of law the right claimed by the company. The existence of those facts appears to be quite as consistent with the absence as with the presence of the right asserted, since, for aught that is stated, a delivery at the warehousing depot without the intervention of the character of warehousemen or depository was altogether practicable, easy, and usual, and was alone within the contemplation of the parties. The verdict discloses no usage or other circumstance to justify us in saying that the bailment for carriage included one for storage also, or which, in my judgment, would warrant the inference that the company were entitled to relieve themselves as carriers by the act of passing the flour from the cars to the warehousing depot. I think, therefore, that the judgment of the court below should be affirmed, with costs.

COOLEY CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J.

I adhere to the opinion which I expressed in the case of *McMillan v. Michigan Southern and Northern Indiana Railroad Company*, 16 *Mich.* 79, that the liability of railway companies for goods in warehouse awaiting delivery is that of warehousemen, and not common carriers. As I gave my reasons for this conclusion in that case, and as nothing has been suggested which has in any way modified them, I do not deem it necessary to repeat them. I think the plaintiffs in error are entitled to judgment of reversal.