# JUNE TERM, 1886.

ERNEST FEIGE v. MICHIGAN CENTRAL RAILROAD COMPANY.

*Railroad company—Liability as common carrier does not shift to that of warehouseman by delivery of goods in warehouse at end of its route, in absence of express contract, or one fairly inferable from the nature of its business, known necessities under which it is carried on, and an established usage on the subject—Common-law liability settled in Buckley v. Great Western Ry. Co., 18 Mich. 121—Which decision, being concurred in by a majority of the Court, is as conclusive upon the point decided therein as if unanimously rendered—And the question passed upon is not open to controversy in subsequent suit—Common carrier and shipper may limit or modify such common-law liability—By a contract not in conflict with any statute of the State—Requirement of How. Stat. sec. 3418 (Act 124, Laws of 1867), that change in or limitation of such common-law liability shall be evidenced by a contract wholly in writing— Is repealed by How. Stat. sec. 3323—Which permits such agreement to be either written or printed—Words "to change or limit" and "to lessen or abridge" are expressions of similar import.*

1. A decision concurred in by a *majority* of the Court is as *conclusive* upon the *point* decided as if *unanimously* rendered, and the question *thus* passed upon is not open to controversy in a subsequent suit.

2. In the absence of an *express* contract, or one fairly inferable from the nature of the business, the known necessities under which it is carried on, and the established *usage* upon the subject, a railway company cannot shift its responsibility as a common carrier to that of a warehouseman by depositing the goods in the warehouse at the end of its route. *Buckley v. Great Western Railway Co.,* 18 Mich. 121.

3. It is competent for a common carrier and shipper to *limit* or *modify* the *common-law* liability of the former by contract not in conflict with any statute of the State, with respect to the character in which the carrier shall hold the goods shipped, when placed in its warehouse awaiting delivery.

* Continued from Vol. 61.

4. Act 124, Laws of 1867 (How. Stat. § 3418), in so far as it requires any
   change in or limitation of the common-law liability of a railroad
   company as a common carrier to be evidenced by a contract *wholly
   in writing,* is repealed by How. Stat. § 3328, which permits such
   agreement to be *either written* or *printed.*

5. The words "to change or limit" and "to lessen or abridge" are
   expressions of similar import.

Error to Saginaw. (Gage, J.) Argued May 11, 1886.
Decided June 17, 1886.

Case. Plaintiff brings error. Affirmed. The facts are
stated in the opinion.

*William H. Sweet* (*W. A. Clark,* of counsel), for appel-
lant.

*Hanchett & Stark,* for defendant.

CHAMPLIN, J. The plaintiff brought this action before a
justice of the peace, to recover damages for goods consigned
to him, which were burned in defendant's freight-house on
the night of October 29, 1883.

In the circuit court the case was tried without a jury, and
resulted in a judgment for defendant. The court made
a written finding of facts, and of his conclusions of law
thereon, which are embodied in the record before us.

There are three assignments of error, all of which raise
the same question, namely, the right of defendant to a judg-
ment upon the record.

The goods in question were in the freight depot, at the
place of their destination, ready for delivery, at and after
noon of October 29, 1883. They consisted of six bundles
of burlaps, weighing 640 pounds, so that neither their bulk
nor weight prevented their being hauled away at one load.
The fire which consumed the freight depot and its contents
occurred between 9 o'clock P. M. of October 29, and 5 A. M.
of October 30, without fault or negligence of the defendant.
The goods were delivered to defendant at Chicago, Illinois, on
October 25, 1883, by Morrison, Anderson & Butchart, to be

transported from Chicago to East Saginaw, and were consigned to plaintiff at the latter place.

At the time of such delivery in Chicago the consignors made out and delivered to defendant a request, signed by them, asking defendant to carry the goods to their destination, subject to "Rules Relating to Transportation," as printed on the back of such request. The eighth rule printed on the back reads as follows:

" The corporation will be liable as warehousemen only, for property when in their store-house."

Thereupon the defendant made and delivered to Messrs. Morrison, Anderson & Butchart a receipt for the goods, upon the back of which was indorsed a like printed copy of the rules and regulations.

The goods were then delivered to the defendant for transportation, and the shippers took the receipt to the general freight agent of defendant, and received from him a bill of lading in the usual form. Upon the back thereof was indorsed the following among other conditions:

" Freight carried by the company must be removed from the station *during business hours*, on the day of its arrival, or it will be stored at the owner's risk and expense; and in the event of its destruction or damage from any cause, while in the depots of the company, either in transit or at the terminal point, it is agreed that the company shall be liable only as warehousemen."

This bill of lading was duly forwarded by the shippers to the plaintiff, and was by him produced upon the trial of this cause. The receipts and bill of lading were printed documents, except signatures, names of parties, dates, and description of goods.

During the day upon which the goods arrived at East Saginaw, defendant's agent deposited in the post-office of East Saginaw a notice of their arrival, upon a postal card, addressed to plaintiff at East Saginaw, and that they would remain there at his risk, subject to storage charges, after 24 hours, and be sold to pay charges if not delivered. This notice was received at the post-office at 2 o'clock P. M. of

October 29, and was delivered by the carrier on the morning
of October 30, after the fire.    About 8 o'clock A. M. of
October 29, plaintiff telephoned to the Michigan Central
Railroad depot, at East Saginaw, to know whether there was
any freight there for him, and was informed that there was
not.    As above stated, it did not arrive until noon.

The counsel for the defendant contend that there is no
liability on the part of the defendant, for the reason that
when a railroad company has transported property over its
line, and stored it in its warehouse, awaiting delivery to the
consignee, it is not liable as common carrier thereafter, but
only as warehouseman, even though the consignee has not
been notified of its reception.    The question was exhaust-
ively discussed in the case of *McMillan v. Michigan South.
& N. I. R. R. Co.*, 16 Mich. 79, and no result was reached,
as the Court was equally divided in opinion.

Two years later the precise point came before the Court
again in *Buckley v. Great Western Ry. Co.*, 18 Mich. 121,
and it was held that, in the absence of an express contract,
or a contract fairly inferable from the nature of the business,
the known necessities under which it was carried on, the
established usage upon the subject, and the like, the carrier
could not excuse itself from responsibility as such carrier
by depositing the goods in its warehouse at the end of its
route.

The question as to the common-law liability of a carrier by
railroad, in the absence of any contract restricting such
liability, cannot be deemed an open question in this State.
It is true that the Court was not unanimous in the conclusion
reached, but a decision concurred in by a majority of the
Court is as conclusive upon the point decided as any decision
of the Court can be, and therefore the question raised by the
counsel for defendant is not open to controversy.

The opinion of the Court in the case last cited maintained
that it was competent for the carrier and shipper to limit or
modify the liability at common law of the carrier, by contract,
with respect to the character in which the carrier should
hold goods placed in its warehouse awaiting delivery.    In

the case now under consideration there was such contract entered into between the parties, which states that "the corporation will be liable as warehousemen only, for the property when in their store-house." This must be an end of the case, unless there is some statute of this State which renders such contract invalid.

In 1855 the Legislature passed an act to provide for the incorporation of railroad companies. Section 48 of that act provided:

"Any railroad company receiving freight for transportation shall be entitled to the same rights, and subject to the same liabilities, as common carriers, except as herein otherwise provided. * * * No railroad corporation created in this State shall be suffered to lessen, or directly or indirectly abridge, their common-law liability as such common carriers."

The inhibition contained in this section was intended to prevent the corporations, by their own *ex parte* act, by way of notice or otherwise, to limit or abridge their common-law liability, but it did not prevent the corporation and shippers from entering into contracts with each other abridging such liability.

In 1867 an act was passed entitled, "An act to fix the liability of railroad companies, as common carriers, in certain cases." (Laws of Michigan, 1867, p. 165.) Section 1 of that act reads as follows:

"That no railroad company shall be permitted to change or limit its common-law liability as a common carrier, by any contract, or in any other manner, except by a written contract, none of which shall be printed, which shall be signed by the owner or shipper of the goods or property to be carried."

. It would be inferred from this legislation that railroad companies had been in the habit of entering into contracts with the owner or shipper of goods, limiting their common-law liability in some respect, and that some general form of printed contract had been adopted, similar, perhaps, to the contract entered into in this case. The Legislature, while not prohibiting the railroad companies from limiting their

common-law liability by contract, required that such contract should be *wholly* in writing, and *signed* by the shipper.

The contention of the plaintiff is that this law is still in force, while that of the defendant is that it has been repealed. The whole case turns upon this question.

In 1871 an act was passed "to revise the laws providing for the incorporation of railroad companies," which, among other things, provided it should apply to all companies organized under the act of 1855, and contained this provision :

" No company shall be suffered to lessen or abridge its common-law liability as a common carrier, unless by agreement, to be signed by both parties thereto."

The act contained a clause repealing all acts and parts of acts contravening any of its provisions, without in terms mentioning the acts repealed. Upon the subject of restricting the common-law liability of railroad companies as common carriers these two acts covered the same subject. The words "to change or limit" and to "lessen or abridge" are expressions of similar import, and the only substantial change between the two acts is that the act of 1867 required the contract to be *wholly written,* and *signed* by the shipper, and that of 1871 required the agreement to be *signed* by *both* parties. Both acts permitted the common-law liability to be changed or abridged by a contract signed by the parties. The change dispensing with the contract being wholly written was very material.

The rights of individuals are as fully protected by a contract which is printed as by one which is wholly written, and one is as binding as the other ; and the only difference between the two statutes is that the latter is less onerous upon the railroad company than the other ; and, since no substantial rights of the parties are affected by the change, it appears evident, from the difference of phraseology, that the Legislature intended to relieve the carrier by railroad of the burden of reducing such contracts to writing, requiring merely that the contract should be signed by both parties thereto.

This intention is still more plainly manifested in the sub-

sequent legislation of 1873.    At this session the Legislature passed an act entitled—

" An act to revise the laws providing for the incorporation of railroad companies, and to regulate the running and management, and to fix the duties and liabilities, of all railroad and other corporations owning or operating any railroad in this State."

It will be noticed that the title of this act, by express mention, covers the subject of fixing the duties and liabilities of railroads.    This act provides that—

" Any railroad company organized under this act, receiving freight for transportation, shall be entitled to the rights, and be subject to the liabilities, of common carriers, except as herein otherwise provided; but no such company shall be suffered to lessen or abridge its common-law liability as a common carrier, unless by an agreement, to be signed by both parties thereto."

The repealing clause of this statute repeals the general act of 1855 ; the act supplementary thereto of 1863 ; the act supplementary to the act of 1855, approved March 27, 1867 ; another act, to compel railroad companies to provide aprons, passed in 1867 ; another act, for the relief of railroad companies in the Upper Peninsula, passed in 1867 ; the act revising the laws for the incorporation of railroads, of 1871 ;

" Also, all laws amendatory thereto, or in any of the parts thereof in conflict with the provisions of this act; but the organization of all corporations, under the provisions of either of said acts, shall be deemed and taken to be organizations under this act, and all rights, obligations, and liabilities contracted or incurred by any of such corporations thereunder, or under the provisions of any law now in force, not inconsistent with the provisions of this act, shall continue of the same force and effect as though such acts or laws had not been repealed ; and all such companies, from and after the taking effect of this act, shall be subject to all the provisions hereof as fully as though such organization had been perfected hereunder."

The defendant's counsel claim that even if the act of 1867 was not repealed by that of 1871, it was by this act of 1873,

not only by express terms, as being in conflict with its provisions, but by implication; since if the two acts are not repugnant, yet if the latter covers the whole subject of the first, and contains new provisions, showing that it was intended as a substitute, it will operate as a repeal : *Shannon v. People*, 5 Mich. 85 ; *Breitung v. Lindauer*, 37 Id. 217 ; *Dewey v. Central Car & Manuf'g Co.*, 42 Id. 399 ; *U. S. v. Tynen*, 11 Wall. 88 ; *Murdock v. Memphis*, 20 Id. 590 ; *U. S. v. Claflin*, 97 U. S. 546 ; *Bartlet v. King*, 12 Mass. 537 ; Potter's Dwar. Stat. 155, note 5.

On the other hand, counsel for plaintiff as strenuously contends that the Legislature of 1873 did not intend to repeal the act of 1867, and he finds evidence of that fact in the repealing clause, which takes pains to specify these acts of the Legislature of 1867 which it repeals by name, all of which were approved the same day as that of 1867. This omission, he claims, shows clearly that the Legislature did not intend to repeal the act in question.

If we pause to inquire what, in all probability, caused the Legislature to specify in the repealing clause the titles of acts which unquestionably had been repealed by former legislation and revision, we will be answered, by the well-known facts, that the legislation upon the subject of rail-roads had become cumbersome and uncertain by amendments, supplementary acts, and revision. An instance appears in the compilation of the laws of 1871, where the compiler included both the general railroad law of 1855 and the revision thereof of 1871, for the reason that he was uncertain whether the revision repealed the act revised.

It was for the purpose of removing any doubts respecting the acts named as being repealed that they were particularly specified in the repealing clause of 1873 ; and the argument and inference of plaintiff's counsel would be quite conclusive had the Legislature been content to have stopped with naming the acts repealed. But it did not do so. It went on, and included all laws amendatory of the acts repealed, and also all laws in any parts thereof in conflict with the provisions of the law then enacted.

In a measure, these two laws do conflict with each other. There is no conflict as to requiring a contract or agreement in order to change or limit the common-law liability. As to this, both enactments have the same purpose, and are entirely harmonious. But the conflict or want of harmony lies in the manner in which such contract or agreement shall be evidenced. The former act required it to be wholly in writing, and signed by the shipper. The latter says nothing about the contract being in writing. It, however, contemplates that it shall not be verbal, merely requiring it shall be an agreement signed by both parties. Both cannot stand together without importing terms into the later statute not called for by any apparent reason or necessity, which would impose an onerous burden upon the contracting parties.

Railroad companies have the right to adjust their charges for carrying, having in view the risks assumed by them or imposed by law. If such risk is to continue after the freight is transported to its destination, and while awaiting delivery from their warehouses, it may, with reason, be presumed that the rate would be higher than it would under an agreement that their responsibility for such goods should be only that of warehousemen. It is also of great importance to the public that the business between carriers and shippers shall be accompanied with as little delay as possible, and the Court should be disinclined to give to the statute a construction which would operate as an obstruction to business.

To require contracts such as this to be wholly reduced to writing would unnecessarily hinder the business facilities for shipping, without accomplishing any good purpose, since the same contract printed, and signed by the parties, is of the same legal validity to secure the rights of the parties. If the contract must still be in writing, the subsequent statute is deprived of all force whatever, and is a waste of words. On the contrary, if we give it effect, the former statute is superseded.

I think it was the intention of the Legislature to repeal the statute of 1867, so far, at least, as it is covered by the act of

1873. It follows that the judgment of the circuit court must be affirmed.

CAMPBELL, C. J., and SHERWOOD, J., concurred. MORSE, J., concurred in the result.