Beer, J.
Was the relation of the company to the goods that of common carrier, or warehouseman ?
It is claimed by plaintiff in error that when the transit is ended, and the carrier has placed the goods in his warehouse to await delivery to the consignee, his liability as carrier'is ended, and he is then responsible as warehouseman only.
*232 In support of this position counsel cite 118 Mass., —; 46 Ala., 63; 30 Pa. St., 247 ; 60 Ia., 109; 23 Cal. 268; 46 Ga., 433; 64 Ill., 284; 25 Ind., 434; 40 Iowa, 679; 71 Mo. 203, and numerous other authorities.
It is claimed by defendant in error that the responsibility of a common carrier, as such, continues, in general, after the goods have reached their destination until the carrier has given notice of their arrival to the consignee, and he has been afforded reasonable time and opportunity thereafter to call for, examine and remove them.
This appears to be the law in Ohio. In the case of Gaines v. Union Transportation Co., 28 Ohio St. 445, the carrier claimed to be relieved of his common law liability by a special contract. Johnson, J., in delivering the opinion of the court says: “ It is conceded there was no such delivery to the consignee, no notice to him with a reasonable time to take charge of it, as will constitute a discharge from common law liability at the end of the transit.” Again, on page 447-: “ The goods had reached their destination, and were unloaded on the pier. The real matter was, whether the carrier had exemption from the usual liabitity of carriers for such a loss at the end of the transit. If the special agreement was binding on the plaintiff, and defendant was in no fault, he was not liable. If he failed to relieve himself from liability under the special agreement, the common law liability for goods destroyed or lost at the end.of the transit, but before notice to the consignee and time to remove them, attached.”
To the same effect are 2 Disney 144; 4 W. L. M. 99, and Swan’s Treatise 371.
In R. R. Co. v McMillan, 16 Mich., Cooley, J., states the common law rule as follows : “ A common carrier’s liability for goods transported by him continues as a carrier until the goods have been placed in a warehouse and the consignee notified of their arrival, and he has had a reasonable time to remove them. After that the carrier becomes liable as a warehouseman.”
A. Blackford, for plaintiff in error.
Ballard & Franks, for defendant in error.
This decision, although pronounced by a divided court, was followed in Buckley v. R. R. Co. 18 Mich. 121, and in Feige v. R. R. Co. 62 Mich 1.
As sustaining this view, we cite: 32 N. H. 523 ; 16 Kan. 333; 2 Bush. (Ky.) 468; 24 La. Ann. 333; 19 Minn. 251; 5 Dutch. N. J. 393 ; 45 N. Y. 622; 49 N. Y. 223; 59 N. Y. 611; 64 N. Y. 254; 11 S. Car. 158; 12 Heisk. 570; 38 Vt. 402; 18 Wisc. 345; 46 Hun. 245; 79 Ala. 395; 35 Ala. 209 ; Redfield on Carriers, § 108.
The only remaining question in the case under review, is whether Hatch had a reasonable time after receiving notice, to call for and take away the goods. We think not. He received notice at 6 P. M. on the 3rd day of February. We take judicial notice of the fact that the sun sets at that season of the year at about 5.20. It was fairly dark when the notice was received. Suppose he had acted promptly upon receipt of the notice, allowing no time for delays, if he had procured a dray and proceeded straight to the company’s warehouse he could not have reached there before 7 o’clock. We do not think he was in duty bound to go there at any such unseasonable hour. In all probability the company’s warehouse would be closed at that hour; but, if not, Hatch was not bound to go there for his goods in the night season. Seven'o’clock at night, on the 3rd of February, is not business hours, and before he had an opportunity to call in business hours his goods had been destroyed by fire. See Fenner v. R. R. Co., 44 N. Y. —.
We hold that at tlie time the goods were lost, the company held them as common carrier.
Judgment affirmed.