Jeffersonville Railroad Co. vs. Cleveland.

CASE 97—PETITION EQUITY—NOVEMBER 26.

# Jeffersonville Railroad Co. vs. Cleveland.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Transportation by steamboats and railroads is necessarily such, that the wharves of the former and depots of the latter are their places of delivery. (*Redfield on Railways*, 250–1.)

2. The liability of railroad corporations as common carriers, for goods transported on their roads, continues until the goods are ready to be delivered at their place of destination, and the owner or consignee has had reasonable opportunity of receiving and removing them. (*Redfield on Railways*, 253; *Moses vs. Boston and Maine Railroad*, 32 *New Hampshire*, 523; *Smith vs. Nashua and Lowell Railroad*, 7 *Foster's R.*, 86.) What is a "*reasonable opportunity of receiving and removing*" the freight, will depend upon the peculiar circumstances of each case—whether the freight arrived at its destination out of time, &c., &c.

GIBSON & FOX,                                    For Appellant,

CITED—

25 *Ind. Rep.*, 434; *Bausemer, &c., vs. Toledo Railroad Company.*

Jeffersonville Railroad Co. vs. Cleveland.

G. W. KILPATRICK,                        For Appellee,.

CITED—

*Angell on Carriers, chap.* 7, *sections* 229, 315. .

1 *Strobhart's S. C. Rep.*, 203 ; *Singleton vs. Hilliard.*

2 *E. D. Smith's N. Y.*, 95 ; *Barclay vs. Clyde.*

14 *Georgia Rep.*, 277 ; *Rome Railway vs. Sullivan.*

32 *N. H. Rep.*, 532; *Moses vs. Boston and Maine R. R.*

7 *Foster's Rep.*, 86; *Smith vs. Nashua and Lowell R. R.*

*Redfield on Railways, secs.* 6, 7, 8, 130, *p.* 253.

*Kent's Commentaries*, 604, 605.

1 *Metcalfe*, 558 ; *Huston vs. Peters, Hardin & Co.*

*Session Acts, January,* 1867, *p.* 42.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

This was a suit in equity.—against the Jeffersonville Railroad Company to recover the value of a quantity of oil-cloth, carpet, and other goods, delivered by the appellee to the agent of said company at Louisville, on the 12th day of April, 1866, to be transported by the company for him from Louisville to Detroit, in the State of Michigan, and which the petition alleges the defendant failed to deliver.

The following receipt or bill of lading was filed with the petition :

" Jeffersonville Railroad Company received, Louisville, April 13, 1866, of owner, the following articles in good order, marked F. A. Cleveland, Detroit, Michigan, subject to exceptions as noted below : 1 roll O. cloth, 1 box mdse.                        G. W. WHEELER, Agt. R."

Although this paper, as copied in the record, is dated the 13th of April, the pleadings and evidence show the true date to be the 12th of April, 1866.

The petition alleges that the defendant promised to carry and deliver " said goods to plaintiff at Detroit, and the plaintiff has repeatedly demanded said goods and

articles of defendants, but they have failed to deliver the same to the plaintiff, or any person for him; but by their negligence, and carelessness of their agents, have lost the same and never delivered them to the plaintiff."

The answer of the company admits it received and undertook to carry the goods to Detroit, and alleges that it did so carry them safely by means of its own road, and the Michigan Southern and Northern Indiana railroad, and that by said last named road the goods were transported to Detroit on the 26th of April, 1866, and that "on the next ensuing day" the owner was notified thereof; but it appears from the evidence the goods were, in fact, received at the depot in Detroit on the evening of the 25th of April, and that a notice to Cleveland of that fact was deposited in the post-office on the morning of the 26th, requiring the removal of the goods within twenty-four hours, and stating that "otherwise storage will be charged."

It is alleged and proved by the defendant that the goods were accidentally destroyed by the burning of the depot building in which they were stored, on the night of the 26th of April, 1866. It is further alleged by the defendant that it was not, and never had been, the custom of said Michigan Southern and Northern Indiana railroad, to deliver goods in Detroit at any other place than its depot, and the defendant denies that said goods were lost or destroyed, in consequence of its negligence or carelessness, or that of its employees, or by the negligence or carelessness of said other road company or its employees; but alleges that they were destroyed by unavoidable accident while held by said last mentioned company, in the capacity of warehousemen, and not as common carriers.

The court, on hearing the cause, rendered a judgment for the plaintiff, from which the railroad company has appealed to this court.

It appears from the evidence, though not stated in the bill of lading, that when the goods were delivered to the agent of the appellant, they were plainly marked with the directions, "F. A. Cleveland, No. 282, Woodward Avenue, Detroit, Michigan."

It also appears from the evidence that not more than from five to seven days were reasonably required to transport the goods by railroad from Louisville to Detroit, and that, in the usual course of transportation, the goods should have arrived in Detroit by the 20th of April; and that the plaintiff was in Detroit on the 20th, and remained awaiting the arrival of his goods until the morning of the 25th, when he left the city, having staid during the time at "No. 282, Woodward Avenue," and attended on each day at the depot to receive his goods. The notice deposited in the post-office for him was not received.

Whether the responsibility of the company, after the arrival and storage of the goods in Detroit, was that devolved by law on carriers or only that of depositaries; it was not necessary, in our opinion, that the company should either give notice of the arrival of the goods or make actual delivery of them, as is now done by express companies, in order that the liability of carriers should cease after reasonable time had elapsed for the owner to attend and remove the goods. The transportation by steamboats and railroads is necessarily such that the wharves of the former and depots of the latter are their places of delivery. It is true, the general rule upon the subject may be controlled by contract or well-established customs; but there is no sufficient evidence of either, in

this case, to affect the rights of either party, in derogation of the general law. (*Redfield on Railways*, 250–1.)

But as the responsibilities of a common carrier greatly exceed those of a mere warehouseman—the former being held as an insurer of the goods against loss occurring from any other cause than the act of God or the public enemy, while those of the latter are only such as the law imposes on ordinary bailees for hire, and do not extend to accidental losses by fire—an essential question arises as to the precise time at which the appellant's responsibility as a carrier terminated, if at all, before the goods were burned.

There is a conflict of adjudication in the several States on the question whether, ordinarily, the responsibility of railroad companies as carriers of goods do not terminate as soon as the goods arrive at their destination or at the terminus of the road, and are placed safely in the company's warehouse or other place of storage.

It was held in *Bausemer et al. vs. the Toledo and Wabash Railway Company* (25 *Indiana*, 434), and in accordance with the case of *Norway Plains Company vs. Boston and Maine Railway* (1 *Gray's R.*, 263), and other cases, that the proprietors of a railroad who are common carriers of goods, and deposit them when they arrive at their destination in their warehouse, without additional charge, until the owner or consignee has a reasonable time to take them away, are not liable as common carriers for the loss of the goods by fire, without negligence or default on their part after the goods are unladen from the cars and placed in the warehouse; but are liable only for ordinary neglect as warehousemen.

On the contrary, it was held in *Moses vs. Boston and Maine Railroad* (32 *New Hampshire*, 523) substantially in accordance with the case of *Smith vs. Nashua and Lowell*

*Railroad* (7 *Foster's R.*, 86), and other cases, that the liability of railroad corporations as common carriers for goods transported on their railroads continues until the goods are ready to be delivered at their place of destination, and the owner or consignee has had reasonable opportunity of receiving and removing them.

This construction of the implied undertaking of the carrier, which seems to be sanctioned by Mr. Redfield in his work on railways (*page* 253), is, in our opinion, reasonable and consistent with the grounds upon which the common law liability of carriers is made to rest.

The rule which subjects the carrier to this strict responsibility is founded on broad principles of public policy and convenience, and was introduced to prevent the necessity of going into circumstances impossible to be unraveled. (2 *Kent's Com.*, 602.) Therefore, ordinarily, as soon as the owner who delivers goods for transportation to the carrier's agent, at the usual place of receiving freight, and relinquishes his own care over them, the legal responsibility of the carrier attaches, although the goods may not be immediately sent forward in their transit. And it is said in *Redfield on Railways*, 254, with reference to this rule, that there is no very good reason why the responsibility of the carrier should not continue until the owner or consignee, by the use of diligence, might have removed the goods. What such reasonable time should be, must, in the nature of the case, when not provided for by express contract, depend on the character of the freight, the distance to which it is to be carried, and the capacity and business of the road, with such other circumstances as would serve to notify the consignee of the probable time when the goods would reach their destination, so that, with proper watchfulness, he might receive them, and thus

terminate the carrier's responsibility as soon as practicable.

When, as in this case, those reasons which usually operate as a *quasi* notice to the consignee, and might be expected to stimulate him to the utmost watchfulness, have failed by the default of the carrier, and the owner or consignee having, in compliance with the rule on his part, attended for days to receive the goods, only to be subjected to successive disappointments, it is manifestly unreasonable and unjust to hold him to the same degree of promptness which would have been required of him had the goods arrived in proper time.

It is said in *Redfield, supra,* on this subject, that when "the rule is applied to goods arriving out of time, and before the consignee could have removed them, reason and justice seem to us to require, that if the company put them into their warehouse for their own convenience, their responsibility as carriers should not be thereby terminated until the consignee has reasonable opportunity to remove them."

As the delay of the appellants in the transportation of the goods, although not satisfactorily explained, was not such as to justify the appellee in treating the goods as having been converted by the corporation, and consequently to abandon them, we do not doubt that if he had received actual notice of the arrival of the goods in time to have removed them, with reasonable diligence, before they were burned, the liability of the appellants as carriers would have ceased.

But under all the circumstances we cannot regard the deposit of the notice in the post-office in the city of Detroit, at some not very well defined time, in the forenoon of the 26th of April, as equivalent to such actual knowledge of the arrival of the goods as would have

Jeffersonville Railroad Co. vs. Cleveland.

enabled the appellee, by reasonable diligence, to have removed the goods during that day and within the usual business hours for the delivery of freight. Such a notice, as we have seen, not being ordinarily required to exonerate the carrier from liability, was not necessarily to be expected and immediately received.

It can scarcely be doubted, that if the goods had been transported in proper time, according to the usual course of such business over the road, and their transit had not been negligently and unnecessarily delayed for at least five days between Louisville and Detroit, they would have been promptly received and removed by the appellee. There is no evidence explaining the cause of the detention of the goods. If any sufficient cause existed the agents of the corporation should have known and communicated the fact to the appellee during the five days he attended at the depot, that he might know when, if at all, he could expect the arrival of the goods. Certainly the strictest rule of vigilance did not require that he should thus constantly await the arrival of the goods for months, or even weeks, without explanation of the delay, or assurance from the company as to what time the goods would arrive. But as the unexplained detention of the goods was such as to render it uncertain when they would arrive, it does not seem to us that he had such reasonable opportunity of receiving and removing the goods after their arrival as would terminate the liability of the company for the goods as common carriers.

We concur in the conclusion of the chancellor, and the judgment is therefore affirmed.