1498.—I. BLUM & CO. *v.* ALEXANDER L. MARKS; WRIGHT, BRINKERHOFF & CO. *v.* THE SAME.—SONNEBORN & CO., HERMAN, AUGUSTE & CO., M. HERZOG & CO., and L. DRYFOOS & CO., Intervenors, etc.

### [*Consolidated Cases.*]

The Courts of Louisiana will recognize and enforce the right of stoppage in *transitu* arising from a sale of goods in New York to an insolvent residing in New Orleans.

The transitus of the goods is not at an end while in the custody of the carrier, and before they have been delivered to the consignee.

To entitle the vendor to have the goods stopped in *transitu* he must show that, at the time of the sale, he was ignorant of the insolvency of the vendee. The discovery of the insolvency before the delivery is sufficient to entitle the vendor to the exercise of the right, although the goods may have been attached by a creditor of the vendee.

APPEAL from the Third District Court of New Orleans. *Fellowes, J. Thomas J. Cooley,* for plaintiffs and appellees. *Phillips & Levy, Hornor & Benedict,* and *A. L. Tissot,* for intervenors and appellants.

HOWE, J. The plaintiffs in these cases, residents of the city of New York, attached on board the steamship "Star of the Union," upon her arrival at this port on the twenty-fourth of April, 1866, certain merchandise which had been sold to the defendant by the intervenors about the twelfth day of the same month, and consigned on the steamer above named.

The obligations on which the plaintiffs sued were contracted February 23, 1866, and were for goods sold at a credit of sixty and ninety days, and upon notes at forty-five and sixty days.

The property seized consisted of six cases of merchandise. They never came into the actual or constructive possession of the defendant to whom they had been shipped. It appears that he had absconded after the purchase of the goods and before their arrival, and the deputy sheriff executed the writs of attachment at the moment the vessel touched her wharf in New Orleans.

The vendors of these goods intervened, claiming respectively such portion as each had sold, on the ground substantially that they had sold the property to defendant about the twelfth April; that he had become insolvent, and that they had exercised the right of stoppage in *transitu,* in such manner and at such time as to give them a claim on the property superior to that of the plaintiffs.

Pending the litigation, and at the instance of plaintiffs, the goods were sold by the sheriff. The court *a qua* gave judgment in favor of I. Blum & Co. for the amount of their claim, to be paid by preference out of the proceeds of sale, and dismissed the claims of the plaintiffs, Wright, Brinkerhoff & Co., and the claims of all the intervenors.

From this judgment the intervenors only have appealed; and the present contest is, therefore, between I. Blum & Co. as attaching creditors, and the intervenors as vendors, who claim to have stopped the goods in transit.

It seems to be conceded by the parties, that the courts of this State will recognize the right of stoppage in *transitu,* arising from a sale in

New York combined with such other facts as by law confer the right. It is quite clear, also, that under the facts of this case, as they will hereafter appear, the privilege of the attaching creditors must yield to the claims of the vendors, provided the latter show that they had the right of stoppage and duly exercised it.    15 Wend. 143; 15 La. 464; 9 A. 92.

It is contended by plaintiffs that, if the defendant was insolvent at all, he was insolvent at and before the time of the sale of the goods in dispute, and that therefore the right of stoppage did not exist, and this brings us to the main question in the case.   It is clear that the defendant was in failing circumstances at the time he made the purchases, but we do not find at that moment any visible change in his pecuniary condition, any open and notories act on his part, calculated to affect his credit and put the vendors on their guard.   It may well be that if the intervenors knew the defendant to be insolvent at the time of sale they could not claim the right; but it is plain that in this case they were not aware of the condition of the defendant.   About seven weeks before they made the sales, he had a standing in New York good enough to enable him to obtain credit from the very plaintiffs in these suits, to the extent of some eight thousand dollars.   The intervenors, so far as we can discover, were not aware of any change in his pecuniary condition when they sold him the goods in controversy.   They show that they shipped the goods by the Star of the Union; that in three or four days they learned for the first time that he was an insolvent and had absconded; that they immediately notified the carrier in New York, requiring him to hold the goods; that as to three of the intervenors, the agent of the line in New York telegraphed to the agent in New Orleans directing him to hold the goods; and that as to the other, notice was given to the agent in New Orleans by the attorneys.   These telegrams were received, and this notice given, here, about four days before the steamer arrived; and the agent in New Orleans testifies that he was thus prepared to hold the goods, and would have done so if the sheriff had not taken them out of his hands.   Under such circumstances, it would seem inequitable, indeed, to allow the plaintiffs to seize these goods, of which the intervenors had, practically, resumed possession.

We have been referred by plaintiffs to the case of Rogers v. Thomas, 20 Conn. 53, in support of the doctrine for which they contend, that the insolvency of the vendee must occur after the sale to authorize the stoppage; but the case does not fully sustain their view.   In that case the Court said, p. 63:

" We think, therefore, that in order to authorize a stoppage in transitu, there should be some ostensible and certain criterion by which the insolvency of the vendee may be ascertained; and that it should consist of some sensible change in his pecuniary situation, some open, notorious act on his part, calculated to affect his credit—some change in his apparent circumstances which would operate as a surprise on the

vendor, and which, if he had known, he would not have given credit to the vendee.

"The remaining inquiry respects the time when *such* insolvency must occur, in order to confer the right. On this point we are of opinion that it is not sufficient if it exists when the sale takes place, but that it must intervene between the sale and the exercise of such right."

We apprehend that this language, if entirely correct, would not militate against the claims of the intervenors, for no such insolvency appears in this case until three or four days after the sale.

In Botlingk *v.* Inglis, 3 East. 381, where goods were shipped from St. Petersburg to London to a person who had committed an act of bankruptcy before the shipment, the right of stoppage was recognized, under the law merchant, as well as the Russian law.

In Buckley *v.* Furniss, 15 Wendell 139, it was considered that if the seller knew of the insolvency at the time of sale, the right might not exist, but it seemed to have been taken for granted that if he did not know of it, its covert existence would not impair the right.

In Conyers *v.* Ennis, 2 Mason 236, the vendee was "deeply and fraudulently insolvent" at the time of the sale, yet Mr. Justice Story, who delivered the opinion of the court, does not seem to have thought that this fact would destroy the right of stoppage, but the right was denied because, before its exercise, the transit had been terminated by delivery.

In his late work on mercantile law, Mr. Parsons says: "It l a ; been held that the insolvency must occur after the sale has taken place," and he cites the case in 20 Conn., in which, as we have seen, the word "insolvency" is used in the sense of a notorious failure of credit; "but," he adds, "we are not disposed to consider this as the correct rule, but should hold that the right existed in case of insolvency before the sale, unless this fact were known to the vendor at the time of the sale." Mer. Law, ed. 1862, p. 61 and notes.

In fine, if, as seems to be now well settled, the right of stoppage be only an extension of the common law lien of the seller on the thing sold for his price, we are unable to perceive any reason for the distinction sought to be established by the plaintiffs in this case, and must therefore conclude that the judgment of the District Court was erroneous.

Our attention is called to a bill of exceptions reserved by plaintiffs to the introduction by the intervenors of certain telegraphic dispatches, "purporting to be dispatches from their houses in New York to A. Moulton, agent, in New Orleans, requesting the agent to hold and *not* deliver certain cases of merchandise shipped by them to defendant," on the ground that no proof was made that the papers produced were in the handwriting of any person employed in the telegraph office, or any other proof of their authenticity, and they refer to 15 An. 668.

We find in the record no such dispatches as those referred to in this bill of exceptions. It appears elsewhere that the intervenors gave due

notice to the carrier in New York, that such notice was communicated to the agent in New Orleans in ample time, and that the goods were never delivered to the consignee. It seems unnecessary, therefore, to pass upon the bill.

For the reasons given, it is ordered and adjudged that the judgment appealed be, as to said I. Blum & Co. and the said intervenors, avoided and reversed; that the claim of said plaintiffs be dismissed as in case of non-suit; and that each of the intervenors have judgment respectively for the proceeds of the sale of the goods claimed and identified by each, with costs, to be paid as follows: to Sonneborn & Co. the proceeds of the case of goods marked "No. 7407;" to M. Herzog & Co. the proceeds of the case of shirts, etc., marked "A. L. Marks;" to L. Dryfoos & Co. the proceeds of the three cases marked "A. L. M., 1068, 1069, 1070;" and to Herman, Auguste & Co. the proceeds of the remaining one of the six cases seized and sold. It is further ordered that the appellees, I. Blum & Co., pay the costs of the appeal.