# Loeb & Brother *v.* Peters & Brother.

*Trial of Right of Property in Boxes of Tobacco.*

| 63 | 243 |
| 96 | 453 |
| 63 | 243 |
| 102 | 681 |
| 63 | 243 |
| 105 | 197 |
| 63 | 243 |
| 107 | 498 |
| 63 | 243 |
| 123 | 615 |

1. *Right of stoppage in transitu.*—The seller of goods may stop them *in transitu*, on account of the insolvency of the purchaser, not only when such insolvency occurred after the sale, but also when, though existing before, it was not discovered until after the sale.

2. *Same; when lost.*—The right of stoppage by the seller is lost, when, before it is exercised, the purchaser has sold the goods, and indorsed the bill of lading, to a sub-purchaser for value in good faith.

3. *Same; evidence of want of good faith by sub-purchaser.*—That the sub-purchaser, when he took a transfer of the bill of lading for the goods, had knowledge of the original purchaser's insolvency, is a fact tending to show that he did not purchase in good faith, and is admissible for that purpose in a contest with the original vendor.

4. *Statements of party as witness in another suit.*—Statements made by a witness while testifying, relative to a material matter in issue in another suit to which he is a party, as showing his knowledge of the insolvency of another person, may be proved against him in that suit without calling him as a witness.

5. *Proof of insolvency.*—Judgments confessed by the original purchaser, before the goods have reached their destination, and executions levied on his property the day after their rendition, tend to prove his insolvency, and are admissible evidence for that purpose.

6. *Who is purchaser for valuable consideration.*—The transfer of the bill of lading by the purchaser of the goods, as collateral security for a pre-existing debt, without any new consideration, does not constitute the assignee a purchaser for valuable consideration.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. J. Q. SMITH.

This was a statutory trial of the right of property in twenty-five boxes of tobacco, between J. M. Peters & Brother, of Virginia, as plaintiffs, and J. Loeb & Brother, of Montgomery, as claimants. The plaintiffs had sold the tobacco to M. Munter & Brother, of Montgomery, and, in the exercise of the right of stoppage *in transitu*, had claimed and demanded them of the carrier, the South & North Alabama Railroad Company, in whose possession the boxes were, and brought an action of detinue to recover them. Loeb & Brother, claiming under a purchase from Munter & Brother, interposed a claim to the tobacco, made the necessary affidavit,

[Loeb & Brother v. Peters & Brother.]

and gave bond for the trial of the right of property; and an issue was thereupon made up between them and the plaintiffs, as the statute directs. The facts are thus stated in the bill of exceptions:

"The plaintiffs resided in Liberty, Virginia, and Munter & Brother in Montgomery, Alabama. On or about December 13th, 1878, by order of Munter & Brother, plaintiffs shipped to them twenty-five boxes of tobacco, sold by them to said Munter & Brother; and on that day a bill of lading for said tobacco was issued by a railroad company, and sent to Munter & Brother at Montgomery. The proof was, that on the 17th December, 1878, five days before the arrival of the tobacco, Munter & Brother sold it to Loeb & Brother, the claimants, and at the same time transferred to them in writing the said bill of lading; and the only consideration of said sale and transfer was a debt, which was then, and had been for some time, due to said Loeb & Brother by said Munter & Brother, and which was credited with the price at which the tobacco was sold. After said sale, and before the delivery of the tobacco to the claimants, or to the consignees, to-wit: on the morning of December 23, 1878, plaintiffs gave notice to the South & North Alabama Railroad Company, the common carrier in whose possession the tobacco was, not to deliver it to the consignees, on the ground that the purchase-money had not been paid, and said Munter & Brother, the consignees, were insolvent. In said notice, plaintiffs tendered to said common carrier the freight due on said tobacco, and demanded the same; which demand being refused by the said carrier, the plaintiffs thereupon brought suit, and the said tobacco was seized under a writ in detinue, on said 23d December, 1878, by the sheriff of Montgomery county, while it was still in the possession of the said carrier, and before any delivery thereof; and thereupon Loeb & Brother interposed a claim under the statute. It was admitted that the plaintiffs had never been paid anything for the tobacco; and there was proof tending to show that said Munter & Brother were insolvent when said tobacco was bought by them, and continued so to be, and were insolvent when said notice was given to the carrier, and when the tobacco was seized; and that the claimants knew, or ought to have known these facts, when they purchased said tobacco. It was proved that said Munter & Brother, two days after the sale of said tobacco, on the 19th December, 1878, confessed judgments in the Circuit Court of Montgomery, in favor of Lehman, Durr & Co., for $4,850, and in favor of another creditor for more than $2,000; and M. Munter, one of said firm, swore that said judgments were confessed in order to give said

creditors a preference. It was in proof, also, that said Munter & Brother's stock in trade was levied on by the sheriff of Montgomery county on the 20th December, 1878, and their store closed. To admission of which evidence claimants objected, but the evidence was admitted; and they excepted.

"In another case, in which Loeb & Brother were defendants, and other parties were plaintiffs, involving other and different matters, with which plaintiffs in this case had no concern, but involving a transaction between claimants and said Munter & Brother, one of the claimants in this case, who was one of the defendants in the case referred to, was examined as a witness; and on this trial, a witness was asked, what said claimant swore to on that trial. The claimants objected to this question, because it was illegal, and because it was irrelevant, and because no predicate had been laid to authorize such question. But, after plaintiffs' counsel had stated, that he expected to prove by said witness that said claimant had sworn to facts on that trial, which showed, or tended to show, that said Loeb & Brother had notice of the insolvency of Munter & Brother at the time of the purchase of said tobacco, the court allowed the question to be asked; and to this action of the court the claimants excepted."

"The court gave a general charge to the jury, to which no exception was taken by claimants; and by the request of the plaintiffs, in writing, instructed the jury as follows: 1. 'In order to constitute Loeb & Brother purchasers in good faith of the tobacco in controversy, they must have bought it without knowledge, either actual or constructive, of the insolvency of Munter & Brother; and if, at the time they purchased, they knew that Munter & Brother were insolvent, or the circumstances known to them were such as ought reasonably to have excited their suspicions, and led them to inquire, then they are not purchasers in good faith, within the meaning of the law.' 2. 'It is not necessary in this case, in order to defeat the claim of Loeb & Brother, that the proof should show that they had actual knowledge of the insolvency of Munter & Brother at the time of their purchase; but it is sufficient to prove that the circumstances known to them were such as ought reasonably to have excited their suspicions, and led them to inquire as to the solvency of Munter & Brother.' 3. 'In order to entitle Loeb & Brother to the tobacco in controversy, they must be purchasers for value, and also without notice, actual or constructive, of Munter & Brother's insolvency.' And to each of said charges the claimants duly excepted."

The charges given to the jury, and the rulings of the court

on the evidence, to which, as above stated, exceptions were reserved, are now assigned as error.

Sayre & Graves, for appellants.—1. The court erred in allowing a witness to prove what one of the claimants swore on a former trial, between Loeb & Brother and other parties. Loeb was a competent witness; and if the evidence was legal, he ought to have been questioned as to his former testimony, and allowed an opportunity to explain what he did say. A witness can not be impeached by proof of former statements or declarations, without first giving him an opportunity to explain. But the testimony itself was illegal. The case was between different parties, and it was not shown what the issues were. The question was improper in form, and called for all the supposed testimony, without regard to its relevancy; and the statement of counsel, as to the legal conclusion he expected to draw from it, does not relieve it of objection.

2. The court erred, also, in admitting evidence of the confessed judgments, and of the levy of executions on the stock of goods of Munter & Brother. If knowledge of insolvency renders void a sale of goods *in transitu*, such knowledge must exist at the time of the purchase. The fact that Munter & Brother confessed judgments after the sale, while it may conduce to show that they were insolvent two days before, when the sale was made, certainly does not tend to show that Loeb & Brother knew it.

3. The charges given, to which exceptions were reserved, are erroneous. They make the validity of the purchase by Loeb & Brother depend upon their knowledge of the insolvency of Munter & Brother; while the true test is, that the purchase is void as against the consignor, when its object is to assist the consignee in avoiding payment to him.—*Cumming v. Brown*, 8 East, 513; *Lee v. Kimball*, 49 Maine, 174; *Crawford v. Kirksey*, 55 Ala. 293. There is no evidence whatever that Loeb & Brother had any knowledge that the tobacco was not paid for, or even had any reason to suppose that it was not paid for. Possession of the bill of lading is *prima facie* evidence of title, and the question is never asked whether the holder has paid for the goods. This is the common practice in the commercial world, as the court judicially knows, and thousands of similar transactions occur every day. That the consignee of the goods is largely indebted, is no evidence that he does not intend to pay his debts. Many men are engaged in business, whose credit is beyond question, and who pay their debts with punctuality, while they are beyond the reach of legal process.— *Winslow v. Norton*, 29 Maine, 421. When the purchaser is insolvent

at the time of the sale, as the evidence here tended to show was the fact, the seller takes the risk upon himself, and can not afterwards assert the right of stoppage *in transitu.—Rogers v. Thomas*, 20 Conn. 53.

L. A. SHAVER, *contra.—*1. The right of stoppage *in transitu* can only be defeated by a transfer of the bill of lading to a *bona fide* purchaser for value.—Benjamin on Sales, 2d ed., 719-20; Waite's Actions and Defenses, vol. 5, p. 616, and authorities there cited.

2. A purchaser for valuable consideration is one who, at the time, parts with something of value—that is, advances a new consideration, surrenders some security, or does some other act which, if the purchase were set aside, would leave him in a worse position than he was before.—Bigelow on Fraud, 309-10; *Wells v. Morrow*, 38 Ala. 125; *Lesassier v. The Southwestern*, 2 Woods, C. C. 35; *Rodgers v. D'Escompte*, Law Rep. 2 P. C. 393; *Harris v. Pratt*, 17 N. Y. 249; Benjamin on Sales, 2d ed., 689, 723. The proof is conclusive that the claimants are not purchasers for value, as defined by these authorities; and there is no conflict in the evidence on this point. Not being such purchasers, they were not entitled to recover, and were not injured by any of the adverse rulings of the court, even if erroneous.

3. Nor were they *bona fide* purchasers, if, at the time of their purchase, they had knowledge of the insolvency of Munter & Brother, or of any facts sufficient to put them on inquiry.— *Wright v. Campbell*, 4 Burr. 2046; Benjamin on Sales, 723; 4 Camp. 31; *Pringle v. Phillips*, 5 Sandf. 157.

4. The right of stoppage *in transitu* extends to all cases of insolvency, "whether existing at the time of the sale, or occurring at any time before the actual delivery of the goods." Waite's Actions and Defenses, vol. 5, p. 613, and authorities there cited.

5. There was no attempt to impeach the witness Loeb. The issue was, knowledge of insolvency *vel non*; and the evidence was relevant to that issue. The other exception to the admission of evidence—" to which evidence claimants objected"—is too general and indefinite, and embraces evidence which is unobjectionable; and if any part of it was admissible, there was no error in overruling the objection.

MANNING, J.—Munter & Brother, being largely in debt, and insolvent, by an order requesting shipment to them, bought of plaintiffs, J. M. Peters & Brother, of Virginia, twenty-five boxes of tobacco; which they accordingly sent

[Loeb & Brother v. Peters & Brother.]

as directed, to Munter & Brother, at Montgomery, Alabama, by railroad, forwarding to them by mail a bill of lading therefor.   On receipt of this, several days before the boxes arrived, Munter & Brother indorsed it, and transferred their right to the goods to J. Loeb & Brother, who gave them credit for the same, on a debt past due, which Munter & Brother owed them.   There was no other consideration for this transfer. Soon afterwards, Peters & Brother, being informed of the insolvency of Munter & Brother, and claiming the right to stop the tobacco *in transitu*, demanded it of the carrier, the South & North Alabama Railroad Company, and sued the same in detinue for it, having first offered to pay the freight money.   Loeb & Brother intervened as claimants, and thereby obtained possession of the goods.   Whereupon, the suit was prosecuted against them, to a verdict and judgment in favor of Peters & Brother, from which Loeb & Brother have appealed to this court.

We do not concur in the opinion expressed in *Rogers v. Thomas* (20 Conn. 54), that a vendor of goods, in transit to an insolvent vendee, can not stop them on the way, before delivery, unless the insolvency of the vendee occurred after the sale to him of the goods.   We think, with the Supreme Court of Ohio, that the vendor may stop the goods upon a subsequent discovery of insolvency existing at the time of the sale, as well as upon a subsequent insolvency.   If there be a want of ability to pay, it can make no difference, in justice or good sense, whether it was produced by causes, or shown by acts, at a period before or after the sale.—*Benedict v. Schuettic*, 12 Ohio St. 515; *Reynolds v. Boston & M. R. R. Co.*, 43 N. H. 589; *O'Brien v. Norris*, 16 Md. 122; *Blum v. Marks*, 21 La. Ann. 268.   The best definition of the right which we have seen, is that in Parsons's Mercantile Law, as follows: "A seller, who has sent goods to a buyer at a distance, and, after sending them, finds that the buyer is insolvent, may stop the goods at any time before they reach the buyer.   His right to do this is called the right of stoppage *in transitu*."— Chap X, p. 60.

If, before this right is exercised, the buyer sells the goods, and indorses the bill of lading for them to a purchaser in good faith, and for value, the right of the first vendor to retake them is extinguished.—*Lickbarrow v. Mason*, 1 Smith's Lead. Cases, 388.   Evidence, therefore, that Loeb & Brother knew, when they took a transfer of the bill of lading, that Munter & Brother were insolvent, was relevant and proper to show, in connection with other testimony, that Loeb & Brother were not *bona fide* purchasers.   And there was no error in permitting a witness to testify what one of that firm had

previously said, tending to show such knowledge, when he was giving evidence in another cause. Statements and declarations, relevant to the matter in hand, which have been made by a party to a cause, may be proved against him, without his adversary being compelled to use such party as a witness in a suit in which he is interested.

The two judgments against Munter & Brother, in favor of creditors, confessed by the former before the tobacco had reached its destination, and the seizure upon execution the next day of property of Munter & Brother, by the sheriff, tended to prove their insolvency; and the evidence of those facts was, therefore, properly admitted.

The transfer of a bill of lading, as a collateral to previous obligations, without anything advanced, given up, or lost on the part of the transferree, does not constitute such an assignment as will preclude the vendor from exercising the right of stoppage *in transitu*. Said BRADLEY, Circuit Justice, in *Lesassier v. The Southwestern*, 2 Woods, 35: "Nothing short of a *bona fide* sale of the goods for value, or the possession of them by the vendee, can defeat the vendor's right of stoppage *in transitu;* and hence it has been held, that an assignee in trust for creditors of the insolvent vendee is not a purchaser for value, and, consequently, takes subject to the exercise of any right of stoppage *in transitu* which may exist against the assignor.—*Harris v. Pratt*, 17 N. Y. 249." Wherefore, it was held in the latter case, that an attachment in the suit of the vendee's creditor, of goods landed by the carrier upon a wharf-boat at the place of delivery, did not prevent the vendor from stopping them *in transitu*.—See, also, *O'Brien v. Norris*, 16 Md. 122; *Naylor v. Dennie*, 8 Pick. 199; *Nicholas v. Lefeuvre*, 2 Bingh. (N. C.) 83. The doctrine is based upon the plain reason of justice and equity, enunciated in *D'Aguila v. Lambert* (2 Eden's Ch. 77), that "one man's property should not be applied to the payment of another man's debt." The right itself is regarded as an extension merely of the lien for the price, which the seller of goods has on them while remaining in his possession; which lien the courts will not permit to be superseded, before the vendee, who has become insolvent, obtains possession, unless, in the meantime, the goods have been sold to a person who, in good faith, has paid value for them, and so would be a loser *by his purchase*, if that were held invalid. Appellants having only credited Munter & Brother on a debt previously due from them, with the price of the tobacco, have nothing more to do, in order to get even, than to *debit* them with the same sum, for the non-delivery of the goods in consequence of the defect in Munter & Brother's title.

[Evans v. Welch.]

The case of *Crawford v. Kirksey* (55 Ala. 282), so much re-
lied on by appellants, is wholly unlike this. The question of
stoppage *in transitu* was in no way involved in it. The con-
troversy there was, whether a conveyance by a debtor in a
failing condition, of property which was indisputably and
entirely his, in payment of a debt to one of his creditors,
was not void as to the others; and this court decided, that
the law permitted such a preference, and that the transac-
tion was not fraudulent in fact.

It results from what we have said, that there was no error
in the charges to the jury.

Let the judgment of the Circuit Court be affirmed.