GREVE & CO. ET AL. v. DUNHAM, SHERIFF.

1. **Sale of personal property;** STOPPAGE IN TRANSITU: REPLEVIN BY VENDOR. Plaintiffs sold on credit and consigned to T. & V. a car load of lumber, which, for certain reasons, they refused to receive. The defendant, sheriff, held writs of attachment against the property of T. & V. who had become insolvent, and one of the attaching creditors paid the freight on the lumber at the point of destination, whereupon one who had been an agent of T. V. receipted to the railroad company for the lumber, and the agent of the railroad company stated to the defendant, sheriff, that it had no further claim on the lumber. The defendant, sheriff, then levied his writs of attachment upon said lumber, and this suit was brought by the vendors to recover possession of the lumber. *Held* that the court rightly found that plaintiffs were entitled to the possession of the lumber, requiring them, however, to repay to the attaching creditor the amount of freight money advanced by him:—Following *McFetridge v. Piper*, 40 Iowa, 627, in which it was held that the vendor's right of stoppage *in transitu* is terminated only by the passage of the goods into the actual or constructive possession of the vendee.

*Appeal from Sioux District Court.*

THURSDAY, DECEMBER 7.

THIS is an action of replevin for a quantity of lumber. The cause was tried to the court, and judgment was entered for the plaintiffs. The defendants appeal.

*G. W. Pitts* and *H. C. Hemenway*, for appellants.

*D. A. W. Perkins*, for appellees.

DAY, J.—The cause was submitted to the court below upon an agreed statement of facts, as follows:

"1. That on or about the first day of January, 1881, plaintiffs shipped from Minneapolis to Teabout & Valleau, at Pattersonville, Sioux County, Iowa, on their order, a certain carload of lumber of the value of $352.55.

"2. That said lumber was sold to Teabout & Valleau upon credit for said sum, and never paid for, and that after the shipment thereof Teabout & Valleau became insolvent.

"3. That N. C. Thompson, Warder, Mitchell & Co., and Warder, Bushnell & Glesner were creditors of said Teabout & Valleau, and plaintiffs in certain attachment proceedings against them.

"4. That on the 30th day of April, 1881, the sheriff, defendant herein, held certain writs of attachment, duly issued in said attachment proceedings, to-wit: one in favor of N. C. Thompson, issued out of the Circuit court of O'Brien County, Iowa; one in favor of Warder, Mitchell & Co., issued out of the District Court of Winneshiek County, Iowa; and one in favor of Warder, Bushnell & Glesner, issued out of the Circuit Court of Winneshiek County, Iowa; and all directed against the property of said Teabout & Valleau.

"5. That for a long time prior to said 30th day of April, one J. H. Valleau was the agent of said Teabout & Valleau, at Pattersonville (neither member of the firm residing there), having sole charge at that point, and duly authorized to perform all duties necessary and customary in connection therewith.

"6. That on the 11th day of January, 1881, the said Teabout & Valleau wrote and mailed to said H. Greve a letter in the following words:

'DECORAH, IOWA, January 11, 1881.

'Mr. Greve—Dear Sir:—The car of lumber sent to Pattersonville went over the Sioux City road to Sheldon, and the charges are $112. We have refused to take it, also the one sent to Parker, D. T. We wish that you would see the S. C. road people about it. Our understanding with you was to consign to St. Paul, care of the C. M. & St. Paul, as we have a rate from St. Paul. The S. C. road want about double the regular rate.

Yours Truly,

TEABOUT & VALLEAU.'

"7. That on the 30th day of April the car containing said lumber, having been shipped as aforesaid, had arrived at Pattersonville, and stood on a side track of C. M. & St. P. R.

R. Co., in the possession of and under the control of said R. R. Co.

"8. That prior to the date last named said Teabout & Valleau and said J. H. Valleau had refused to receive said car load of lumber, owing to excessive freight charges.

"9. That on said 30th day of April the agent or attorney of N. C. Thompson was informed by said J. H. Valleau that a car load of lumber shipped to Teabout & Valleau was on the R. R. track in Pattersonville, upon which the freight charges were unpaid.

"10. That, thereupon, the said J. H. Valleau in the name of Teabout & Valleau receipted to said R. R. Co. for said lumber. The said agent of N. C. Thompson paid to said R. R. Co. the freight money due thereon, which was $112. The R. R. Co. issued a receipt in favor of Teabout & Valleau for said freight money so paid, and announced to the sheriff, defendant herein, that the said R. R. Co. had no further right in said lumber, or to the possession thereof, and nothing further to do with it.

"11. That previous to this time many carloads of lumber had been delivered by said R. R. Co. to said Teabout & Valleau upon the receipt of said J. H. Valleau, and that it was not the custom or duty of said R. R. Co. to unload lumber so received, or to deliver freight, until their charges thereon were paid.

"12. That so far as was known to defendant herein, or to said attaching creditors, or to said R. R. Co., the said J. H. Valleau had authority to act for Teabout & Valleau at the time he gave said receipt for said lumber.

"13. That thereupon the defendant herein duly levied upon said lumber the writ aforesaid by taking the same into his possession, removing it from the car and placing it in a warehouse owned by Teabout & Valleau, near the said R. R. track.

"14. That afterward, and on or about the 23d day of May, 1881, the plaintiffs tendered to the defendant the amount of

freight money paid to the R. R. Co. by the agent of N. C. Thompson as aforesaid, and demanded possession of said lumber, which was refused.

"15. That previous to the demand just mentioned, neither the defendant herein, nor said attachment creditors, nor said R. R. Co., had any knowledge of the fact that plaintiffs had sold said lumber on credit, or that they had or claimed any lien thereon, or interest therein.

"16. That upon said refusal to deliver said lumber, as set out in paragraph 14 above, plaintiffs then brought this action, and, by virtue of the writ issued herein, obtained possession of the said lumber, which they still retain."

The court found the plaintiffs entitled to the possession of the property, but required them to pay the amount of freight advanced by Thompson. We think the court below decided correctly. In *McFitridge & Co. v. Piper*, 40 Iowa, 627, it was held that the vendor's right of stoppage *in transitu* is not defeated by the arrival of the goods at the place of destination, and that it will be terminated only by the goods passing into the actual or constructive possession of the vendee. See *Alsburg, Jourdan & Co. v. Latta*, 30 Iowa, 442. Teabout & Valleau, by their letter of January 11th, 1881, refused to take the lumber, and there is nothing in the agreed statement of facts to show that they ever receded from this refusal. The lumber was held by the railroad company, at the time of the attachment, but there is nothing to show that it was held by the company as the agent of the consignee. It does not, therefore, appear that the lumber had come into the actual or constructive possession of Teabout & Valleau. The agreed statement shows that, for a long time prior to April 30th, J. H. Valleau was the agent of Teabout & Valleau, but it is not agreed that he was their agent or had any authority to act for them on that day. It certainly cannot be claimed that a creditor of Teabout & Valleau could pay the freight charges and bind them to an acceptance of the lumber. Appellants make a point as to the length of time intervening

between the consignment and the attempt to reclaim the property. We are not, however, able to determine from the agreed statement when the lumber arrived at the point of destination. We do not, however, consider the intervening time as material. The real question is, was there a delivery of the property to the consignee? The judgment of the court below is

AFFIRMED.