## THE FAVORITE.[1]

### PETERS, Master, etc., v. HELLER and others.

*(District Court, E. D. Pennsylvania. March 26, 1886.)*

In Admiralty.

---

## THE E. H. PRAY.[2]

*(District Court, E. D. New York. July 24, 1885.)*

SALE—STOPPAGE IN TRANSITU—ASSERTION OF VENDEE'S INSOLVENCY—NON-DE-
    LIVERY OF CARGO—BILL OF LADING—VENDEE'S RIGHT OF ACTION.
    A cargo of clay was shipped by H. on board the schooner E. H. Pray, un-
    der a bill of lading providing for its delivery to P. Before the delivery of
    the clay H. appeared, and, asserting the insolvency of the libelant, and the
    non-payment of the price, ordered the master not to deliver the clay to P.,
    which direction the master obeyed. P. thereupon brought suit on the bill of
    lading against the vessel to recover damages for non-delivery of cargo. *Held,*
    that the assertion of the fact of insolvency by the vendor, made in good faith
    and believed by the master, coupled with the fact that the goods had not been
    paid for or the price secured, and the other fact that the stoppage was during
    the continuance of the *transitus,* justified the master in delivering the cargo
    to the vendor, and gave the vendee no right of action against the vessel.[3]

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.
[2] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.
[3] See note at end of case.

In Admiralty.

*Jas. K. Hill, Wing & Shoudy,* for libelant, Samuel L. Pewtress.
*Benedict, Taft & Benedict,* for claimant.

BENEDICT, J.   One Hayes, upon the order of the libelant, shipped on the schooner E. H. Pray a cargo of clay, for which the master of the schooner issued to Hayes a bill of lading in the ordinary form, providing for the transportation of the clay from Amboy to New Haven, and its delivery there to the libelant on the payment of freight. One copy of this bill of lading, together with an invoice of the clay, Hayes furnished to the libelant, who received the same.   Upon the arrival of the vessel at New Haven, and before the delivery of the clay, Hayes appeared, and asserting the insolvency of the libelant, and the non-payment of the price of the clay, required the master of the vessel not to deliver the clay to the libelant, but to take it to New York.   The master of the vessel obeyed the directions of Hayes, refused to deliver the clay to the libelant, and took it to New York. Whereupon the libelant sues the schooner upon the bill of lading to recover damages for the non-delivery of the cargo to him.

Upon these facts the question is not whether Hayes, the vendor, as between himself and the vendee, could lawfully stop the clay *in transitu;* but whether, the clay having been stopped *in transitu* by Hayes, the libelant can recover on the bill of lading for non-delivery of the clay to him.   Here the direction to deliver the clay to the libelant contained in the bill of lading was countermanded by the shipper, and the goods stopped by him, before delivery to the vendee or negotiation of the bill of lading.   At this time the price of the clay had not in fact been paid, the *transitus* had not in fact been ended, and the insolvency of the vendee was asserted by the vendor as the reason of exercising the right of stoppage *in transitu,* and believed by the master.   Under such circumstances I do not think the risk of determining the question of the vendee's solvency can be cast upon the master of the ship.   As it seems to me, the assertion of the fact of insolvency by the vendor, made in good faith and believed by the master of the ship, coupled with the facts that the goods had not been paid for nor the price secured, and the other fact that the stoppage was made during the continuance of the *transitus,* justified the master in delivering the cargo to Hayes, the shipper and vendor, in place of the libelant, and gave the libelant no right of action against the ship.

In the case of *The Tigress,* Brown. & L. 45, it is said:

"The vendor exercises his right of stoppage *in transitu* at his own peril; and it is incumbent upon the master to give effect to that right so soon as he is satisfied that it is the vendor who claims the goods, unless he (the master) is aware of a legal defeasance of the vendor's claim."

Here Hayes was the vendor of the goods; he had not been paid by the libelant; there was no legal defeasance of the vendor's claim, and the vendor demanded the goods upon the ground of the insolv-

ency of the vendee. These circumstances justified the master in refusing to deliver the goods to the libelant, and constitute a good defense to such an action as this.

The libel is dismissed, and with costs.

### NOTE.

The right of stoppage *in transitu* exists until the goods are delivered to the buyer, or possession, actual or constructive, is taken by him. Hall v. Dimond, (N. H.) 3 Atl. Rep. 423.

The seizure of personal property, consigned to purchasers, by virtue of process against their goods, does not destroy the vendor's right of stoppage *in transitu*. Sherman v. Rugee, (Wis.) 13 N. W. Rep. 241.

The vendor's right of stoppage *in transitu* is not defeated by the arrival of the goods at the place of destination, but is only terminated by the goods passing into the actual or constructive possession of the vendee. Greve v. Dunham, (Iowa,) 14 N. W. Rep. 130.

The right of stoppage *in transitu* may be asserted by the vendor of goods at any time before their delivery to the vendee by the carrier. United States Wind Engine & Pump Co. v. Oliver, (Neb.) 21 N. W. Rep. 463.

Where a wholesale merchant has sold goods to a retail dealer on six months' time, such merchant cannot claim the right to stop said goods in transit without showing that the purchaser is insolvent, and that the goods have not been delivered to him. Walsh v. Blakely, (Mont.) 9 Pac. Rep. 809.

When goods are sold on the condition that title shall not pass until they are paid for, the vendor retains the right to stoppage *in transitu*, as against the vendee, or an innocent third person who purchases of the vendee before the arrival of the bill of lading or the goods. Pattison v. Culton, 33 Ind. 240.

A merchant may exercise the right of stoppage *in transitu* while goods remain in the hands of the carrier. Calahan v. Babcock, 21 Ohio St. 281.

Where a merchant sold goods which were levied on and seized under an execution against the purchaser while they were in the hands of the carrier, and the freight charges paid, it was held that the vendor's right of stoppage *in transitu* was not terminated by the levy and seizure. Rucker v. Donovan, 13 Kan. 251.

The seller of goods may stop them *in transit* on account of the purchaser's insolvency existing before, but not known to the seller until after, the sale. Loeb v. Peters, 63 Ala. 243.

It is said that the right of stoppage *in transitu* is lost if the purchaser has sold the goods, and indorsed the bill of lading to a subpurchaser for value in good faith. St. Paul Roller-Mill Co. v. Great Western Despatch Co., *ante*, 434; Loeb v. Peters, 63 Ala. 243. See, also, Newhall v. Central Pac. R. Co. 51 Cal. 345.