Longworth v. Cincinnati, C. S. C. (special term), 10 Dec. Re., 683; Strauss v. Cincinnati, C. S. C. (general term), 11 Dec. Re., 92.

It follows from what has been said, that no irregularity or illegality appearing in the proceedings of the council, the plaintiff is not entitled to the relief he prays for, and the temporary restraining order heretofore issued will be dissolved, and the petition dismissed at plaintiff's costs.

Taylor and Taylor and E. O. Randall, for plaintiff.

Paul Jones, City Solicitor, Florizel Smith, Asst. City Solicitor, F. A. Davis and James Caren, for defendants.

---

## COMMON CARRIER'S LIABILITY.                        230

[Hancock Circuit Court, March Term, 1892.]

Beer, Moore and Seney, JJ.

### *LAKE ERIE & WESTERN R. R. CO. v. CALEB HATCH.

1   CONTINUES UNTIL AFTER REASONABLE TIME TO REMOVE THE GOODS.

In the absence of statutory regulations, the liability of a common carrier continues after the goods have reached their destination until the consignee has been notified of their arrival, and has had a reasonable time to call for and remove them.

2.   IF CARRIER PLACES GOODS IN WAREHOUSE, BECOMES LIABLE AS WAREHOUSEMAN.

If, after arrival, the goods be placed in a warehouse, and the consignee fails, after being notified, to call for and receive them within a reasonable time, then the carrier becomes liable as warehouseman.

3.   NOTICE OF ARRIVAL AFTER DARK—CARRIER LIABLE FOR DESTRUCTION THAT NIGHT.

Notice of arrival of the goods received by the consignee after dark, in the month of February, would not require him to call for them before business hours the next day, and the carrier is liable if the goods are burned that night in its warehouse.

Error to the Court of Common Pleas of Hancock county.

Hatch sued the railroad company as a common carrier to recover the value of goods shipped to him from Sandusky to Findlay, which the company failed to deliver.

The company admits it carried the goods; that they arrived at its station at Findlay, and that they were not delivered to Hatch. It avers that Hatch was notified of their arrival; that he failed to call for and receive them within a reasonable time; that they were placed in the company's warehouse, where, without any fault on the part of the company, they were destroyed by fire.

Upon request the court of common pleas found the following facts:

"The goods arrived at Findlay on February 2, A. D. 1891, at 7:30 p. m.

"They were unloaded and placed in the company's warehouse the next morning at 7 o'clock.

"At nine o'clock the same morning the company deposited a notice directed to Hatch, partly printed and partly written, in the street letter box, which was post-marked at 1:30 p. m., and was received by Hatch at six p. m.

"At about two o'clock the next morning (Feb. 4th), the freight house, with its contents, was destroyed by fire. Afterwards, the same morning, Hatch went to the station and demanded his goods.

"It is and always has been the custom of the company to give notice of the arrival of goods at its station at Findlay."

The court held the company liable as a common carrier and gave judgment for Hatch for the value of the goods.

The company seeks to reverse the judgment.

---

*This judgment was affirmed by the supreme court. See opinion, 52 O. S., 408.

BEER, J.

Was the relation of the company to the goods that of common carrier, or warehouseman?

It is claimed by plaintiff in error that when the transit is ended, and the carrier has placed the goods in his warehouse to await delivery to the consignee, his liability as carrier is ended, and he is then responsible as warehouseman only.

In support of this position counsel cite 118 Mass., —; 46 Ala., 63; 30 Pa. St., 247; 60 Ia., 109; 23 Cal. 268; 46 Ga., 433; 64 Ill., 284; 25 Ind., 434; 40 Ia., 679; 71 Mo., 203, and numerous other authorities.

It is claimed by defendant in error that the responsibility of a common carrier, as such, continues, in general, after the goods have reached their destination until the carrier has given notice of their arrival to the consignee, and he has been afforded reasonable time and opportunity thereafter to call for, examine and remove them.

This appears to be the law in Ohio. In Gaines v. Union Trans. Co., 28 O. S. 445, the carrier claimed to be relieved of his common law liability by a special contract. Johnson, J., in delivering the opinion of the court, says:

"It is conceded there was no such delivery to the consignee, no notice to him with a reasonable time to take charge of it, as will constitute a discharge from common law liability at the end of the transit." Again, on page 447: "The goods had reached their destination, and were unloaded on the pier.· The real matter was, whether the carrier had exemption from the usual liability of carriers for such a loss at the end of the transit. If the special agreement was binding on the plaintiff, and defendant was in no fault, he was not liable. If he failed to relieve himself from liability under the special agreement, the common law liability for goods destroyed or lost at the end of the transit, but before notice to the consignee and time to remove them, attached."

To the same effect are 2 Disney, 144; Roberts v. Union Express Co., 2 Dec. R. 577, (s. c. 4 W. L. M., 99), and Swan's Treatise, 371.

In R. R. Co. v. McMillan, 16 Mich., Cooley, J., states the common law rule as follows:

"A common carrier's liability for goods transported by him continues as a carrier until the goods have been placed in a warehouse and the consignee notified of their arrival, and he has had a reasonable time to remove them. After that the carrier becomes liable as a warehouseman."

This decision, although pronounced by a divided court, was followed in Buckley v. Railroad Co., 18 Mich., 121, and in Feige v. Railroad, 62 Mich., 1.

As sustaining this view, we cite: 32 N. H., 523; 16 Kan., 333; 2 Bush (Ky.), 468; 24 La. Ann., 333; 19 Minn., 251; 5 Dutch N. J., 393; 45 N. Y., 622; 49 N. Y., 223; 59 N. Y., 611; 64 N. Y., 254; 11 S. Car., 158; 12 Heisk., 570; 38 Vt., 402; 18 Wisc., 345; 46 Hun., 245; 79 Ala., 395; 35 Ala., 209; Redfield on Carriers, sec. 108.

The only remaining question in the case under review is whether Hatch had a reasonable time, after receiving notice, to call for and take away the goods. We think not. He received notice at 6 p. m. on February 3. We take judicial notice of the fact that the sun sets at that season of the year at about 5:20. It was fairly dark when the notice was received. Suppose he had acted promptly upon receipt of the notice, allowing no time for delays, if he had procured a dray and proceeded straight to the company's warehouse he could not have reached there before 7 o'clock. We do not think he was in duty bound to go there at any such unseasonable hour. In all probability the company's warehouse would be closed at that hour; but, if not, Hatch was not bound to go there for his goods in the night season. Seven o'clock at night, on the 3rd of February, is not business hours, and before he had an opportunity to call in business hours his goods had been destroyed by fire. See Fenner v. Railroad Co., 44 N. Y. —.

We hold that at the time the goods were lost the company held them as common carrier.

Judgment affirmed.

A. Blackford, for plaintiff in error.

Ballard & Franks, for defendant in error.