ALFRED E. UNDERHILL AND ALMERON M. UNDERHILL v.
THE MUSKEGON BOOMING COMPANY.

*Finding of fact—Delivery of logs.*

The Supreme Court cannot draw conclusions of fact.

Logs were to be driven by the sellers to a certain point, but before
  they reached it, their agent in charge of driving the logs turned
  them over to a booming company by the purchaser's order.
  *Held* that as the facts concerning the agent's authority, and
  what took place concerning delivery, were not submitted to the
  jury, the Supreme Court could not find that delivery in law had
  actually been made so as to take away the right of stoppage
  *in transitu.*

Error to Muskegon.    Submitted April 16.    Decided
April 24.

TROVER.    Plaintiffs bring error.

*Stephenson & McLaughlin* and *Taggart & Wolcott* for
plaintiffs in error.    The question of the delivery of mer-
chandise is for the jury, *De Ridder v. M'Knight*, 13
Johns., 294; *McClung v. Kelly*, 21 Iowa, 508; *Riddle v.
Varnum*, 20 Pick., 283; *George v. Stubbs*, 26 Me., 250;
*Marble v. Moore*, 102 Mass., 443; *Kelsea v. Haines*, 41 N.
H., 253; *Fuller v. Bean*, 34 N. H., 290; *Dyer v. Libby*,
61 Me., 45; in case of an executory contract for the
sale of logs to be paid for on delivery, title does not
pass till delivery, Benj. on Sales, §§ 3, 78, 308–310 n. *c*,
318, 319 n, 352; *Denny v. Williams*, 5 Allen, 3; *Bethel
Steam Mill Company v. Brown*, 57 Me., 18; *Barret
v. Goddard*, 3 Mass., 107; *Macomber v. Parker*, 13 Pick.,
182; *Sumner v. Hamlet*, 12 Pick., 82; *Prescott v. Locke*,
51 N. H., 101; *Russell v. Carrington*, 42 N. Y., 118;
*Stone v. Peacock*, 35 Me., 388; *Bellows v. Wells*, 36
Vt. 599; *Morse v. Sherman*, 106 Mass., 433; *Chap-
man v. Shepherd*, 39 Conn., 413; *Chapman v. Lothrop*, 6
Cow., 113; *Ward v. Shaw*, 7 Wend., 405; where a sale
of logs is made without specifying the logs, title remains

in the vendor till delivery, *Browning v. Hamilton*, 42 Ala., 484; *Warren v. Buckminster*, 24 N. H., 336; *Scudder v. Worster*, 11 Cush., 573; *Kein v. Tupper*, 52 N. Y., 550; *Groat v. Gile*, 51 N. Y., 437; *Crofoot v. Bennett*, 2 N. Y., 258; *Kimberly v. Patchin*, 19 N. Y., 330; *Bradley v. Wheeler*, 44 N. Y. 495; so long as a sale remains executory and title has not passed, no disposition of the property by the vendee can affect the vendor's right, Benj. on Sales, § 320 n. *d*; *Glover v. Austin*, 6 Pick., 220; *Baker v. Fuller*, 21 Pick., 318; *Johnson v. Hunt*, 11 Wend., 138; *Lickbarrow v. Mason*, 1 Smith's Lead. Cas., 388; nor can the vendor's right be affected by liens incurred by the vendee, so long as the right of stoppage *in transitu* remains, *Durgy Cement Co. v. O'Brien*, 123 Mass., 12.

*Smith, Nims & Erwin* for defendant in error. The actual delivery to a vendee or his agent by which a transit is ended may be at the place where the vendee means the goods to remain until he orders a fresh destination, *Dixon v. Baldwin*, 5 East, 175; or it may arise from the vendee's taking possession of them at some point short of the original destination, *Mohr v. Bost. & Alb. R. R. Co.*, 106 Mass., 72; where goods are to be delivered to the vendee at a particular place, the transit generally continues until they are to be delivered to him there, but if he prevents the delivery by his own act and does any act equivalent to taking possession, the transit is ended, *Foster v. Frampton*, 13 E. C. L., 107; *L. & N. W. Ry. Co. v. Bartlett*, 7 H. & N., 407; stoppage *in transitu* takes place only where there is a vendor, vendee and middleman; if goods come into the actual or constructive possession of the vendee, the vendor's right over them is gone, *Cooper v. Bill*, 3 H. & C., 727.

COOLEY, J.   The controversy in this case concerns the right to stop in transit certain logs sold by plaintiffs

to the copartnership of E. Eldred & Co., and which came to the control of the defendants in the Muskegon river.

The logs were sold by two different contracts in writing, one of which it is conceded was fully performed, and the logs delivered under it. A copy of the other is given in the margin.* Under it the plaintiffs cut and put into the west branch of Muskegon river 135,431 feet of logs, but not in time for the main drive on the Muskegon river. Eldred & Co. had an arrangement with the booming company to receive, run and boom on Muskegon lake, these logs together with a large amount of other logs belonging to them and marked in the same manner, except that these, in addition to the mark of Eldred & Co., had a figure upon them, put on by plaintiffs to indicate the camps from which they were taken, and by which it was possible to identify them. The delivery of the logs into the west branch of the Muske-

---

*This article of agreement, made the twelfth day of December, in the year of our Lord one thousand eight hundred and seventy-six, between Elisha Eldred & Co., of Chicago, and State of Illinois, of the first part, and Alfred E. Underhill and Almeron M. Underhill of Missaukee county, Michigan, parties of the second part, witnesseth, That the said parties of the second part (for the consideration hereinafter mentioned, to be performed by the said party of the first part), does hereby covenant and agree with the said Elisha Eldred & Co., parties of the first part, as follows, to-wit: To cut, haul and deliver to the said parties of the first part, in the west branch of the main Muskegon river, one hundred thousand feet or thereabouts, board measure, of good board and strip white pine saw logs, to be taken from the following described lands, to-wit: the northeast fractional quarter of northeast fractional quarter of section five (5), in township twenty-two (22) north, of range six (6) west, in the county of Missaukee and State of Michigan. All of said logs are to be selected from good, sound, thrifty pine, to be long butted when necessary so as to be free from butt shakes and to be otherwise free from ring rot, or any other defects which would render the same unmerchantable in quality. No log to scale less than eighteen (18) inches in diameter at the small end, scaling measurement, and sufficient deduction to be made in all crooked logs so as to make them straight; to be measured or scaled by a competent person that may be selected by the said parties mutually, and in accordance with Doyle's scale, so called, the expense of scaling to be mutually borne by the parties to this contract. All of the above mentioned logs to be well and properly cut, and not to be cut up into the limbs any further than will make them good board and strip logs, and to be cut in such lengths as the said party of the first part or his agent may direct from time to time. All to be plainly marked with the

gon was completed about the first of March, 1877. The place of delivery was some fifty or sixty miles above Big Rapids. The delivery not being in time for the main drive in the Muskegon river, plaintiffs under their contract became obligated to drive them until the main drive should be overtaken, and they employed one Watson to drive them to the mouth of the west branch. He drove them to Big Rapids where defendants took charge of them by request of Eldred & Co., though this was long after the main drive had passed, and run them to the mouth of the river, where they delivered them on the order of Eldred & Co. to the firm of Blanchard, Borland & Co. Before this time, however, the firm of E. Eldred & Co. had lost credit, and had ceased to meet their obligations, and plaintiffs served written notice on defendants to retain the logs, and not deliver to Eldred & Co., or to any other party or parties, without the order of plaintiffs. This notice seems to have been

---

recorded mark of the parties of the first part, being O+S and U, made with marking hammer on end of each log.

No old logs, none cut from down and dead timber, and no logs with any other side or end mark on than that of the parties of the first part, and none having had other marks cut out or defaced are to be put in, and no logs from timber sawed down accepted or received on this contract.

And all logs scaled and marked with the side and end mark of said first party, or either of them, and left on the bank, skidways or in the woods, are to be and remain their property, but to be paid for only when they shall be delivered afloat as aforesaid, in marketable condition, and then at the fair, actual market value thereof, at the time of such delivery.

And no logs with said first party's mark on them shall be sold or delivered to any one else without the written consent of said party of the first part, first had and obtained.

All damages to logs, in putting down rollways or slides, to be made good by said parties of the second part.

It is understood and agreed by and between the parties hereto, that all the logs are to be delivered afloat in the main Muskegon river, as early as they can be run or floated down in the spring of 1877, and in case of failure to put in said logs in time for the main drive at the time herein stated, then the party of the second part is to drive the said logs, free of all expenses to the parties of the first part, until the main drive be reached; and all logs not driven are to be scaled back and deducted from the scale. All said logs to be cut from the lands of the parties of the first part, as hereinbefore described, and to be free from all incumbrances whatsoever. And it is further agreed by said parties, that the number of feet in each log shall be marked on end of same by the scaler appointed as

served immediately before the delivery commenced. Defendants disregarded the notice, and were sued in trover; the charges for running the logs having previously been tendered them.

The circuit judge was of opinion that as soon as the logs were delivered into the west branch of the river they were delivered to Eldred & Co., and he therefore instructed the jury to find for the defendants, which they did. It is not contended in this court that this charge was correct. The plaintiffs were not only to put the logs into the west branch, but they were also to drive them until the main drive was overtaken. This was never done. Possibly what was done by Watson in allowing defendants to take possession of the logs on the order of Eldred & Co. was equivalent to delivery and acceptance by Eldred & Co., but the facts concerning Watson's authority, and what took place respecting deliv-

hereinbefore provided, and such scaler shall be furnished with a man to so mark said logs as aforesaid, at the expense of said second parties.

And it is further understood and agreed between the parties to this contract, that all the logs so cut, scaled, marked and delivered afloat, as hereinbefore provided, are to be received by said parties of the first part, to the amount of one hundred thousand feet or thereabouts in board measure, and paid for at the rate of eight dollars and seventy-five cents, ($8.75) per thousand feet, as follows, to-wit: to advance to said party of the second part, in the performance of this agreement, ($50) fifty dollars December 15, 1876; ($50) fifty dollars January 15th, 1877; ($50) fifty dollars February 15th, 1877; ($50) fifty dollars March 15th, 1877; when all said logs are afloat in the main Muskegon river, an amount which, with the advances then already made, sufficient to make eight dollars and seventy-five cents per M feet on all logs so delivered after retaining an amount sufficient to pay for the land bought of the Grand Rapids & Indiana Railroad Company, amounting to ten hundred and fifty dollars, with interest from date of purchase, out of the eight dollars and fifty cents per thousand feet.

All the above advances or payments to be made in proportion to the amount of work actually done, it being understood that all money so advanced is to be applied solely to the prosecution of this job, and to no other purpose. The balance that may be due (after deducting the amount of advances) to be paid as follows, to-wit: on the purchase of the land from the Grand Rapids and Indiana Railroad Company.

In witness whereof, parties to this contract have hereunto set their hands and seals the day and year first above written.

In duplicate.      ELISHA ELDRED & CO. [SEAL.]
                          ALFRED E. UNDERHILL, [SEAL.]
                          ALMERON M. UNDERHILL. [SEAL.]

ery, were not submitted to the jury, and as we have no authority to draw conclusions of fact, we are not at liberty to find that delivery in law has actually taken place.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.