KINGMAN & COMPANY (A CORPORATION) v. WILLIAM C.
DENISON AND THE McCORMICK HARVESTING
MACHINE COMPANY (A CORPORATION).

*Chattel mortgage—After-acquired property—Stoppage in transit.*

1. The lien of a chattel mortgage covering all additions to and sub-
   stitutes for the property described in the mortgage will not
   attach to goods ordered by the mortgagor before giving the
   mortgage, and which never actually came into his possession
   as owner.

2. At the time of the delivery of goods shipped to a merchant on
   his written order his store and stock were in the possession of
   an agent who represented several mortgagees, whose mortgages
   were given after the goods were ordered, and under one of
   which a sale was made at about the date of such delivery, and
   the goods bid in by one of the mortgagees, who remained in
   possession, and from whom, and the merchant, who was act-
   ing as agent for the mortgagee, a portion of the goods ordered
   were replevied by the vendor, who claimed the right to stop
   them in transit.  And it is held that if the merchant was
   insolvent when he made the order, or became so at any time
   before the claimed delivery of the goods, and if they were
   never actually delivered to his possession, the vendor's rights
   were paramount to any acquired at the mortgage sale, which
   question of actual delivery was for the jury.

Error to Kent.  (Grove, J.)  Argued January 14, 1891.
Decided February 27, 1891.

Replevin.  Plaintiff brings error.  Reversed.  The facts
are stated in the opinion.

*Taggart & Denison,* for appellant.

*Sweet & Perkins,* for defendants.

LONG, J.  On July 8, 1889, defendant Denison wrote
the plaintiff at ·Peoria, Ill., ordering 5,000 pounds of
twine.  No dealings had ever been had between the

parties prior to that time. The plaintiff received the letter the next day, and at once wrote Denison: "We have entered your order, and twine will go forward to-morrow." On July 11 the twine was shipped to W. C. Denison, Grand Rapids, Mich., plaintiff taking shipping bill from the railroad company there, and on same day sending it to Denison, with statement of account for value of the twine. The twine was received at Grand Rapids by the Grand Rapids & Indiana Railroad Company, July 17, and on the 18th it turned it over to a teamster, who delivered it at the store which was occupied by Denison at the time the order was made.

It appears that on July 9 the Grand Rapids Savings Bank caused an attachment to be levied upon Denison's property. On that evening Denison gave the bank a chattel mortgage on all the goods in the store and at a warehouse there, and a store situate at another place outside of Grand Rapids. July 10, 11, and 12 he gave mortgages on the same property to several other creditors, two of them being given to the defendant the McCormick Harvesting Machine Company. The goods mortgaged were held in the store by the agents of the bank until they were sold under one of the mortgages, which was about July 18, at which time the defendant the McCormick Harvesting Machine Company bid the goods in, and continued to occupy the store, putting Mr. Denison in as its agent. The McCormick Harvesting Machine Company mortgage contained a clause, after a description of the property mortgaged, as follows:

"And all additions to and substitutes for any or all of the above-described property."

On September 7 plaintiff, who had no notice or knowledge of the changed condition of Mr. Denison's affairs, drew on him at sight for the amount of the bill.

This draft was not paid, and on September 14 plaintiff
wrote him for prompt remittance, which was not made.
On September 19, 1889, plaintiff brought replevin against
the defendants for the twine, finding about one-half of
it; the balance having been sold out of the store by the
McCormick Harvesting Machine Company. On the trial.
of the cause the defendants waived return of the property,
and had verdict and judgment against the plaintiff for
$351.91, the value of the twine taken, and costs. Plaintiff
brings error.

The plaintiff asked the court to instruct the jury that
plaintiff 'was entitled to a verdict; and in the ninth
request asked an instruction that—

"If Mr. Denison did not in fact receive the twine at
his store, but was not there when it was delivered, and
never received and accepted it for his use in any way,
except that, finding it in the store, he allowed the mort-
gagees to assume control of it, plaintiffs could retake it
as against him."

And in the fourteenth request it was asked that the
jury be instructed that—

"The McCormick Company, as mortgagee, is in no
better position than Mr. Denison. Its mortgage does not
cover this twine, nor is it a *bona fide* purchaser."

Several requests were also asked for instructions to the
jury relating to the insolvency of Mr. Denison at the
time of the purchase, and his intent not to pay for the
twine at the time of its purchase, or at the time when it
was received at the store, on July 18. These last-named
requests we do not deem it necessary to set out here for
an understanding of the points involved. The requests
*set out* were refused by the trial court, and upon such
ruling the plaintiff assigns error.

The court, in its charge to the jury, stated:

" Plaintiff claims the right to the possession of these goods at the time this suit was commenced—*First,* because, as counsel claims, the goods were ordered, were purchased, by Mr. Denison at a time when he was insolvent, and knew that he was insolvent, and had no intention, or at least no reasonable expectation, of paying for them according to the terms of the contract; and the plaintiff's counsel also claims the right of stoppage in transit. All I need to say in regard to the latter claim is that I think the right of stoppage in transit, under the facts of this case as shown by the evidence, has no application whatever; there is no such right existing."

This part of the charge relating to the right of stoppage in transit is assigned as error.

The court was in error in refusing these requests to charge and in the charge as given. It is not seriously contended here but that, under the evidence given on the trial, the defendant Denison was insolvent at the time the goods were ordered. At least this was a question of fact which should have been submitted to the jury; and, if so found, the question of the right of stoppage in transit was an important question in the case.

The right of stoppage in transit is a right possessed by the seller to reassume the possession of goods not paid for while on their way to the vendee, in case the vendee becomes insolvent before he has acquired actual possession of them. It is a privilege allowed to the seller for the particular purpose of protecting him from the insolvency of the consignee. The right is one highly favored in the law, being based upon the plain reason of justice and equity that one man's property should not be applied to the payment of another man's debts. *Gibson v. Carruthers,* 8 Mees. & W. 337. But it is properly exercised only upon goods which are in passage and are in the hands of some intermediate person between the vendor and vendee in process and for the purpose of delivery; and this right may be exercised whether the insolvency exists

at the time of the sale, or occurs at any time before actual delivery of the goods, without the knowledge of the consignor. *O'Brien v. Norris,* 16 Md. 122; *Reynolds v. Railroad Co.,* 43 N. H. 580; *Blum v. Marks,* 21 La. Ann. 268; *Benedict v. Schaettle,* 12 Ohio St. 515. This right of stoppage in transit will not be defeated by an apparent sale, fraudulently made, without consideration, for the purpose of defeating the right. There must be a purchase for value without fraud, to have this effect. *Harris v. Pratt,* 17 N. Y. 249.

In the present case it appears that the goods arrived in Grand Rapids July 17, and were taken to the store on the 18th. Mr. Denison was not in the store at the time they were taken in. Mr. Talford was in possession of all the goods and of the store at this time for all the mortgagees, and after the sale under the mortgage the McCormick Company took possession, and was in possession at the time this replevin suit was commenced. The testimony tends to show that at the time demand was made upon the McCormick Company and Mr. Denison for the twine Mr. Denison stated that he thought the plaintiff, having heard of his financial affairs, would not ship the twine, and that he did not know it had been shipped until it was in the store; and he was very sorry it had come, under the circumstances. The McCormick Company claimed that by the terms of its mortgage it was entitled to hold the twine.

The court was in error in not submitting to the jury the question whether the goods had come actually to the possession of Mr. Denison. The circumstances tend strongly to show that he never had actual possession of them, and never claimed them as owner. He had made the order, and was notified that they would be shipped; but from that time forward it is evident that he made no claim to them. The McCormick Company claimed

that they passed to it under the terms of its mortgage. It, however, stood in no better position then Denison. If the goods never actually came into the possession of Denison as owner, the mortgage lien would not attach, even under the clause in the mortgage covering after-acquired property. It does not stand in the position of a *bona fide* purchaser of the property. The right of stoppage could not be divested by a purchase of the goods under the mortgage sale. The transit had not ended unless there was actual delivery to Mr. Denison.

These were questions of fact for the jury, which the court refused to submit. If the jury had found that Denison was insolvent at the time the order was made, or became insolvent at any time before the claimed delivery of the goods, and that the goods were never actually delivered to the possession of Mr. Denison, then the vendor's rights would have been paramount to any right which the McCormick Company could have acquired at the mortgage sale. *Underhill v. Booming Co.,* 40 Mich. 660; *Lentz v. Railway Co.,* 53 Id. 444; *White v. Mitchell,* 38 Id. 390; *James v. Griffin,* 2 Mees. & W. 623.

In the view we have taken of the case, we think the the other questions raised are unimportant, and we will not pass upon them.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.