(Court of Common Pleas, Lucas County.)

## JACOB KOONTZ et al. v. THE WHEELING & LAKE ERIE RAILWAY CO.

1. The general rule is, that the vendor of goods on credit, may exercise the right of stoppage in transitu on the insolvency of the vendee at any time before there is an actual or constructive delivery of the goods to the vendee.

2. An exception to this rule is, when, during the transit the vendee transfers the bill of lading to a bona fide purchaser for value. By such transfer the right of stoppage is terminated.

3. When, before the delivery of the goods to the vendee or his agent, he sell

them to the carrier in payment of a pre-existing debt, the carrier is not a bona fide purchaser for value, and the right of stoppage in transitu, still remains in the vendor.

(Decided April 10, 1897.)

PUGSLEY, J.

This action was tried to the court, a jury being waived. It was brought by the plaintiffs, who are a firm doing business in New Martinsville, West Va., to recover the value of a car of lumber sold by plaintiffs upon credit, to the Gashe Lumber Co., of Toledo, and which lumber, it is alleged, that the defendant converted to its own use. The case was submitted upon an agreed statement of facts, the material part of which I will read:

"On or about the —day of January, 1895, said plaintiffs delivered to the said Ohio River Railroad Company, at New Martinsville, West Virginia, a certain car of lumber, being Ohio River Railroad car, 1443, by said plaintiffs, consigned to The Gashe Lumber Company, Toledo, Ohio, to be transported to said city of Toledo via the defendant's line of railroad, and there, by said defendant, to be delivered to the Gashe Lumber Co. On or about the 1st day of February, 1895, said car of lumber was duly delivered to, and accepted by the defendant, for transportation to said city of Toledo, and thereupon said defendant did transport the same to said city, where said car arrived, on or about the 2d day of February, 1895.

"The said defendant duly notified the said The Gashe Lumber Co., of the arrival of said car of lumber, consigned to it as aforesaid, but from said time continuously up to, and including the 7th day of February, 1895, said car, together with the lumber thereon, remained upon the yard track of said defendant, in said city of Toledo, for delivery to said The Gashe Lumber Co.

"On or about the 7th day of February, 1895, said The Gashe Lumber Co., was indebted to said defendant, on account of freight on said car 1443, hereinbefore referred to, and was also indebted to said defendant in an amount greater than $293.

"On or about the 7th day of February, 1895, The Gashe Lumber Co. sold said car of lumber to said defendant, and (the following being subject to exception by either party as to its competency), there was no consideration for said sale and transfer, other than the payment pro tanto of said pre-existing indebtedness.

"Said lumber was thereupon, by said defendant, used in the manufacture and repair of its cars.

"The plaintiff sold said car of lumber to said The Gashe Lumber Co. on credit, and no part of the purchase price therefor, has ever been paid.

"On the 2d day of February, 1895, said The Gashe Lumber Co., was, and ever since said time, has been insolvent, and unable to pay its indebtedness.

"On the 21st day of February, 1895, said plaintiffs notified defendant not to deliver said lumber to said The Gashe Lumber Co., and requested said defendant to hold the same subject to their order. They also demanded from said defendant, the possession of said lumber, and, at the same time, tendered the said defendant the sum of $31, the amount due for freight charges on the same; but said defendant refused, and still refuses, to give said plaintiffs the possession thereof.

"Said lumber was reasonably worth the sum of $293, and the freight charges thereon, were the sum of $31."

Upon the pleadings and the agreed statement of facts, the claim is made by the plaintiffs, that they were entitled to the possession of the lumber in the exercise by them of the right of stoppage in transitu, and upon a refusal to deliver up the lumber as demanded, the defendant is liable as for a conversion. The question involved in this case, when it was first presented, seemed to be very simple and easy of solution, but after carefully considering the decisions and the reasons upon which they are based, I have experienced some difficulty in arriving at a satisfactory conclusion. No similar case is found in the books; but the general principles underlying the doctrine of stoppage in transitu, so far as they are applicable, are quite well settled, and it is only by applying those principles that the rights of the parties here can be determined. Before considering what I regard as the real questions in the case, I will refer to some of the propositions that were discussed by counsel, but which I think are not involved.

First, the plaintiffs are not in a position to claim that they were entitled to the possession of the lumber, on the ground that the sale made by them to the Lumber Co. was voidable for fraud, and that they elected to rescind the sale for that reason. It is true, that in that part of the reply which is called the second reply, it is alleged that The Gashe Lumber Co. obtained the lumber from the plaintiffs on credit, by falsely and fraudulently representing that it was solvent, and would be able to pay for the lumber when the credit should expire, and that on the 21st of February, the date of their demand, the plaintiffs elected to rescind the sale and re-take the lumber. These allegations of the reply cannot be considered, for the reason that thereby, the plaintiffs attempted to set up a cause of action in the reply which is inconsistent with the cause of action in the petition, which constitutes a departure in pleading, that is not permissible. (Sec. 5079, Rev. Stats.)

And for the further reason that no proof was offered to sustain these allegations. An allegation of new matter in the reply is deemed controverted by the defendant as upon a direct denial or avoidance. (Sec. 5081, Rev. Stats.) The agreed statement of facts is silent upon the subject, and therefore the right of the plaintiffs to rescind the sale made by them to The Gashe Lumber Co., and to recover the property on the ground of fraud, is not involved in the case. If the plaintiffs had made these allegations in their petition, and they were either admitted or proved, then there would be no apparent difficulty in disposing of the question at issue. In that event, the case of Eaton v. Davidson, 46 Ohio St., 355, would be applicable, wherein it was held that "where a purchaser fraudulently obtains goods from the owner, and transfers them to another in payment of a pre-existing debt, such preexisting debt alone, will not be a sufficient consideration to constitute the transferee a bona fide purchaser for value, as against the owner from whom the goods were thus obtained by fraud.', There being no proof in this case that the lumber was fraudulently obtained by The Gashe Lumber Co., the only right which the plaintiffs had, if any, was the right of stoppage in transitu, which is the right of the vendor, upon the insolvency of the vendee, to resume possession of the goods while they are in transitu. And the prevailing opinion now is, that the exercise of this right does not rescind the sale, but simply restores the vendor to his lien on the goods for the purchase price. I will say, however, that the reasoning of the court in the Eaton case, already cited, has some bearing upon the question to be hereafter considered, viz: whether, as against the right of the vendor to stop the goods in transitu, a pre-existing debt is a sufficient consideration to constitute the purchaser from the vendee a bona fide purchaser for value.

In the next place, it is alleged in the reply, that a receiver of the Gashe Lumber Co. was appointed upon February 9th, 1895, and that the alleged sale by the Lumber Co. to the defendant, did not occur until after that date. The agreed statement of facts is silent as to when, if at all, a receiver was appointed, but it is agreed therein, that the sale by the Lumber Co. to the defendant, was made on February 7; therefore, the matter of the receivership is not a question in the case. I do not understand that anything is claimed by counsel for plaintiffs under that allegation, and I allude to it only because it is discussed by counsel for defendant, in his brief.

The question to be determined in this case, as I take it, is, whether the plaintiffs' right of stoppage in transitu was terminated by the act of the consignee in selling the lumber to the defendant, under the circumstances set out in the agreed statement of facts. The right of stoppage in transitu, is one that is highly favored in the law, as all authorities agree. It is based, as is said, upon the plain reason of justice and equity, that one man's goods shall not be taken to pay another man's debts, and is highly favored on account of its intrinsic justice. The general rule is, that the vendor may exercise the right of stoppage in transitu on the insolvency of the vendee, at any time before the goods are delivered to the vendee, either actually, or constructively. The only exception to that rule which I have been able to discover is, when, during the transit, the vendee transfers the bill of lading to a bona fide purchaser for value. In this case, it is not claimed that the lumber was ever actually delivered to the consignee. Was there a constructive delivery? It was not delivered to an agent of the consignee nor to any person to hold for the consignee. The ordinary case of a constructive delivery which is generally cited, is where the goods have arrived at their destination, and the charges against the same are paid, and thereafter, under a new agreement, the carrier holds possession of the goods, not as carrier, but as agent of the vendee. In such a case the goods are regarded as constructively in the possession of the vendee, and the transit is at an end. The only cases of a constructive delivery which are referred to in the authorities, are cases where the goods are retained in the possession of the carrier as agent of the vendee, or are delivered to a third person as agent of the vendee. I will read a few extracts from Benjamin on Sales, upon the subject as to when the transit ends. First, sec. 839:

"The transit is held to continue from the time the vendor parts with the possession until the purchaser acquires it; that is to say, from the time when the vendor has so far made delivery, that his right of retaining the goods and his right of lien, as described in the antecedent chapters, are gone, to the time when the goods have reached the actual possession of the buyer."

In sec. 840, the author quotes from the case of James v. Griffin, 1 Meeson & Wellsby, 20, as follows:

"The delivery by the vendor of goods sold to a carrier of any description, either expressly or by implication named by the vendee, and who is to carry on his account, is a constructive delivery to the vendee; but the vendor has a right if unpaid, and if the vendee be insolvent, to re-take the goods,—before they are actually delivered to the vendee, or some one whom he means to be his agent to take possession of, and keep the goods for him,—and thereby to replace the vendor in the same situation as if he

had not parted with the actual possession. * * The actual delivery to the vendee or his agent, which puts an end to the transitus, or state of passage, may be at the vendee's own ware-house, or at a place which he uses as his own, though belonging to another, for the deposit of goods; or, at a place where he means the goods to remain, until a fresh destination is communicated to them by orders from himself; or, it may be by the vendee's taking possession by himself or agent, at some point short of the original intended place of destination."

Citing the case of Mohr v. Boston & Albany R. R. Co., 106 Mass., 67, where Judge Morton says:

"In all cases of delivery of goods to a common carrier for the purpose of transit, the vendee, acting in good faith, has the right to intercept the goods before they reach their destination, and, by taking actual possession of them, to defeat the vendor's lien."

In sec. 852, the author quotes from ex parte Cooper, 11 Ch. D., 68, the following:

"Where goods are placed in the possession of a carrier, to be carried for the vendor, to be delivered to the purchaser, the transitus is not at an end so long as the carrier continues to hold the goods as a carrier. It is not at an end until the carrier, by agreement between himself and the consignee, undertakes to hold the goods for the consignee, not as carrier, but as his agent; and the same principle will apply to a ware-houseman or wharfinger."

"Sec. 856. Of course, the mere arrival of the goods at destination, will not suffice to defeat the vendor's rights. The vendee must take actual, if he has not obtained constructive possession. What will amount to taking possession, is a question in relation to which much of the law already referred to, in connection with actual receipt, under the statute of frauds, and delivery sufficient to divest lien, will be found applicable. In Whitehead v. Anderson, it was held, as we have seen, that going on board the vessel and touching the lumber, was not taking it into possession; and per Cur.: It appears to us very doubtful, whether an act of marking, or taking samples, or the like, without any removal from the possession of the carrier, though done with the intention to take possession, would amount to a constructive possession, unless accompanied by such circumstances as to denote that the carrier was intended to keep and assented to keep the goods in the nature of an agent for custody."

I will also refer to the case of Calahan v. Babcock, 21 Ohio St., 281. In this case, the goods, after they had arrived at their destination, and when held by the carrier in his freight department, were attached at the instance of the vendee's creditors. This suit was brought by the vendors, claiming the right of stoppage in transitu against the attaching officers for a conversion, and a judgment in favor of the vendors was sustained. The first two paragraphs of the syllabus are as follows:

"The right of stoppage in transitu is regarded with favor, and the engrafting of further restrictions upon the rule governing it, is not warranted by public policy.

"The right of stoppage in transitu is extinguished only by the actual and complete delivery of the goods consigned, to the vendee or to some agent of and for him."

I will read from the opinion, which was delivered by Judge West, on page 293:

"The transit of goods consigned in the usual general terms, by a vendor on credit, is terminated, and his right of stoppage extinguished only when their possession is voluntarily and actually transferred to the vendee, or to his agent. But the carrier of goods thus consigned, and all middlemen into whose custody they pass in furtherance and virtue of the consignment, are, by implication of law, constituted agents of the vendor, not of the vendee. Therefore, the transfer of goods consigned, as in this case, from the coaches of the carrier by railway to his freight depot or ware-house at the station designated for their discharge, in the vicinity of the vendees residence or place of business, there to await the payment by him of the charges thereon, as a condition precedent to their removal to, and delivery at his business house, does not ipso facto constitute a transfer or delivery of possession to him, or to any one as agent of, and for him; but is the reasonable exercise of a right and duty by the carrier, in the course and furtherance of their transit, referable to and in virtue of his original employment by, and as agent of the vendor to transport and deliver. Wherefore, until the vendee in person, or his agent under and for him, shall become custodian in possession, neither the transit of the goods nor the vendor's right of stoppage will be held to have terminated.

"It is not intended to intimate that the midleman may not become the agent of, and, as such, the custodian holding possession under and for the vendee. But such agency will not be implied from the carrier's original employment, and can arise only by showing affirmatively, some arrangement or understanding to that effect other than the general words of an ordinary consignment."

Also from Reynolds v. Railroad, 43 N. H., 591: "The right of stoppage terminates only with an actual delivery, unless the carrier consents to hold the goods for the consignee, or wrongfully refuses to deliver them.

"There is no constructive possession on the part of the vendee, unless the relation in which the carrier stood before, as a mere instrument of conveyance to an appointed place of destination, has been altered by a contract between the vendee and the carrier, that the latter should hold or keep the goods, as the agent of the vendee."

At first blush it might seem that such dominion or control over the property as is implied in the act of selling it and allowing the purchaser to take possession, would amount to a constructive delivery to the vendee; but there is no authority for such a view; and under the well settled rules governing the subject, a delivery of property by the carrier on the order of the vendee to a third person, is not a constructive delivery to the vendee against the vendor's right of stoppage, unless such person takes possession as the agent of the vendee. And of course, it makes no difference at what point in the transit such delivery is made or attempted. The case of a bona fide purchaser of property from the vendee stands upon a different footing, and is wholly independent of the question of a delivery to the vendee. No authority is cited to sustain the contention that there was in this case a delivery of the lumber to the consignee, either actual or constructive, and my conclusion is, that there was no such delivery, and that the lumber was still in transitu, when the defendant took it into its exclusive possession as owner. The lumber while it was upon the track in Toledo, was as much in transit as at any point on the line of defendant's road before it reached Toledo; and any disposition of the property by the vendee while it was upon the track in Toledo, can have no greater effect than such disposition would have if made before the property reached. Toledo. It is well settled, as I have already read some of the authorities upon that subject, that a delivery of property by the carrier to the vendee, or his agent, before reaching its destination, will terminate the vendor's right of stoppage in transitu as well as such delivery at the point of destination; but no one will contend that a delivery by the carrier to a third person on the order of the vendee before the goods have reached their destination, to be held by such third person otherwise than as agent of the vendee, will amount to a constructive delivery to the vendee, so as to defeat the vendor's right of stoppage as against such third person. How, then, can it be contended that such delivery on the track in Toledo, will amount to a constructive delivery to the vendee?

The next question is, whether this case comes within the exception to the general rule. In other words, is the defendant a bona fide purchaser for value? Benjamin on Sales, sec. 862:

"The vendor's right of stoppage in transitu, is defeasible in one way only, and that is, when the goods are represented by a bill of lading, or other document of title, and when the vendee, being in possession of a document of title with the vendor's assent, transfers it to a third person, who bona fide gives value for it."

And I read from the note, which cites a large number of authorities:

"An attachment of the goods on their passage to the consignee, as the property of the consignee, does not defeat the right of the consignor to stop them in transitu; nor will a sale of the goods by the purchaser before the termination of the transit, if such sale is not made by a bona fide transfer of the bill of lading.

And to the same effect is Hutchinson on Carriers, sec. 414. The leading case on this subject, is Lickbarrow v. Mason, 6 East, 21. This case is found and extensively annotated in 1 Smith's Leading Cases, 711, from which I will quote. It is said in that case, that the vendee of goods by the assignment of the bill of lading to a bona fide transferee, may defeat the vendor's right to stop them in transitu. This is put upon the ground that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. I will read from the notes on page 746:

"The second vendee of a chattel cannot, generally speaking, stand in a better situation than his immediate vendor. If, therefore, the vendee sell the goods before they have been delivered to him, he sells them, generally speaking, subject to the vendor's right to stop in transitu. But on this rule the principal case has engrafted an exception; for the second and main point in Lickbarrow v. Mason, is, that the vendee may, by negotiating the bill of lading to a bona fide transferee, defeat the vendor's right to stop in transitu * * *. But if the assignee of a bill of lading act mala fide; for instance, if he knew that the consignee of the goods was insolvent, and took the assignment of the bill of lading for the purpose of defeating the right to stop in transitu * * * the consignor will preserve his right of stoppage."

Again on page 766:

"While the transitus continues, the right of the vendor to stop them, upon the occurrence of insolvency in the vendee, may be defeated by a bona fide sale, for a valuable consideration, accompanied with a transfer of the bill of lading. All these requisites must, however, concur. A sale for a valuable consideration, unaccompanied by a transfer of the bill of lading, although sufficient to pass the property in the goods, does not affect the power of the consignor to stop them in transitu. Absence of the bill of lading is constructive notice that

the consignee has not paid for the goods, and that the consignor has not waived his right of resuming his lien for the purchase money."

I know nothing in the authorities that is in conflict with what I have read. It thus appears, that to constitute a bona fide purchaser for value as against the right of stoppage in transitu, there must be an assignment and transfer of the bill of lading. The record in this case is silent upon that subject. No mention is made of a bill of lading in the pleadings, or in the agreed statement of facts.

There was some discussion as to where the burden of proof is, or what the presumption is in the absence of proof. My opinion is, that when it is shown that the goods are in the possession of the carrier; and that there has been no delivery to the vendee, either actual or constructive, the burden of proof is upon the carrier to show that it is a bona fide purchaser for value.

Again it is claimed, that a pre-existing debt is not a sufficient consideration to constitute the carrier a bona fide purchaser for value. The authorities upon that subject are in conflict. The few decisions that have been rendered are about equally divided. The authorities in this country which hold that a pre-existing debt is a valuable consideration in such a case, do so upon the ground that it is well settled that it is an adequate consideration for a transfer of negotiable paper, and that the transfer of negotiable paper is not to be distinguished from the transfer of other personal property; but this distinction between the two kinds of transfers, is sustained by the supreme court of this state in the Eaton case, and the reasoning of the court in that case, I think, fully sustains the claim, that as against the vendor's right of stoppage in transitu, a pre-existing debt is not a sufficient consideration for the purchase.

It is alleged by counsel for the defendant, in view of the language of some of the decisions, that the right of stoppage in transitu cannot be asserted against the carrier, unless the goods are in the possession of the carrier qua carrier, or as carrier. This language in the connection in which it is used, means simply, as will be seen by examining the cases, that if the goods are in the possession of the carrier, not as carrier but as agent of the vendee, as may be the case, the transit is ended, and the right of stoppage in transitu is extinguished. The case of a purchase by the carrier from the vendee, was not in contemplation by the court using that language, and no such case was being considered. When the carrier is making no claim to the goods as owner, it is true that he must have possession of the goods as carrier, in order to sustain the vendor's right of stoppage; but if the language is to be construed as applicable to all cases other than those before the court, then a gift or fraudulent disposition of the goods by the vendee to the carrier while they are in transitu, and under which the carrier claims ownership, would defeat the right of stoppage in transitu, which no one claims. If, on the other hand, it is said that in the latter case, by reason of the invalidity of the vendee's disposition of the goods, the carrier is to be regarded as in possession of the goods as carrier, it can be equally said under the facts of this case, and for the same reason. I have considered the case as if the purchaser of the lumber was a third person and as if this action was against such third person. Certainly, the claim of the defendant to the lumber can be no higher or better, under the same circumstances; and some reasons might be urged why it is not so good.

For the reason, therefore, that there was no delivery of the lumber to the consignee, either actual or constructive, and that the defendant was not a bona fide purchaser for a valuable consideration, judgment must be rendered for the plaintiffs. Under the stipulation between the parties, the judgment will be for $262, with interest from February 21, 1895, to the first day of this term—April 6, 1897.

The following authorities were examined in preparing this opinion:

Loeb v. Peters, 63 Ala., 243; Lesassin v. Southwestern Co., 2 Woods, 35; Kingman v. Denison, 84 Mich., 608; Rosenthal v. Dessau, 11 Hun., 49; Harris v. Pratt, 17 N. Y., 250; U. S. Co. v. Oliver, 16 Neb., 612; Patterson v. Cotton, 33 Ind., 240; Atkins v. Colby, 20 N. H., 154; Cabeen v. Campbell, 30 Pa. St., 254; White v. Mitchell, 38 Mich., 390; Farrell v. R. R. Co., 102 N. C., 390; Clapp v. Peck, 55 Iowa, 270.

(The judgment in this case was affirmed by the Circuit Court, Oct. 11, 1897.)

Marshall & Fraser, for plaintiffs.

Swayne, Hayes & Tyler, for defendant.